*27
 
 Matthias, J.
 

 The plaintiffs in error predicate their right to furnish opinions and certificates of title, regardless of whether or not they insure or guarantee such title, upon the provisions of Section 9850, General Code, and claim that full authority was conferred upon said companies by this statute to perform the acts set forth in the first paragraph of the order of injunction.
 

 Section 9850, General Code, provides as follows:
 

 “A title guarantee and trust company may prepare and furnish abstracts and certificates of title to real estate, bonds, mortgages and other securities, and guarantee such titles, the validity and due execution of such securities, and the performance of contracts incident thereto, make loans for itself or as agent or trustee for others, and guarantee the collection of interest and principal of such loans; take charge of and sell, mortgage, rent or otherwise dispose of real estate for others, and perform all the duties of an agent relative to property deeded or otherwise entrusted to it.”
 

 Plaintiffs in error claim they are authorized by this statute not only to prepare abstracts of title and insure titles to real estate, but also have a separate and distinct authority to furnish an opinion as to the validity of a title, though it does not exercise its authorized functions as an insurer or guarantor of such title.
 

 We are persuaded that the great weight of authority supports the proposition that furnishing such opinion, whether in a so-called statement or certificate of title, falls within the realm of the practice of law. Corporations are expressly precluded from practicing law. Since a corporation may not practice law, if the acts brought into question here constitute the practice of law, it follows that a corporation may not lawfully perform any of such acts.
 

 The chief point of controversy in these cases is whether the acts enumerated in the order of injunc
 
 *28
 
 tion do fall within the scope of the practice of law.
 

 There is little support for the contention that the practice of law is limited to the conduct of cases in court; on the contrary it is held to have a much wider scope.
 

 The practice of law is “as generally understood, the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court.” 49 Corpus Juris, 1313, Section 5.
 

 This view is supported by substantial authorities, among the cases being
 
 People
 
 v.
 
 Alfani,
 
 227 N. Y., 334, 125 N. E., 671, where it is held as follows:
 

 “The practice of law is not limited to the conduct .of cases in courts. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law. An attorney-at-law is one who engages in any of these branches of the practice of law.”
 

 A very terse definition of the practice of law is announced in the case of
 
 People
 
 v.
 
 Title Guaranty & Trust Co.,
 
 180 App. Div., 648, 168 N. Y. Supp., 278, 36 N. Y. Cr. Rep., 210, as follows:
 

 “The practice of the law, as the term is now commonly used, embraces much more than the conduct of litigation. Thé greater, more responsible and delicate part of a lawyer’s work is in other directions. Drafting instruments creating trusts, formulating
 
 *29
 
 contracts, drawing wills and negotiations, all require legal knowledge and power of adaptation of the highest order. Beside these employments, mere skill in trying law suits, where ready wit and natural resources often prevail against profound knowledge of the law, is a relatively unimportant part of a lawyer’s work.”
 

 Though this case was distinguished from
 
 People
 
 v.
 
 Alfani, supra,
 
 and the judgment reversed in
 
 People
 
 v.
 
 Title Guarantee & Trust Co.,
 
 227 N. Y., 366, 125 N. E., 666, 38 N. Y. Crim. Rep., 128, the several opinions disclose wherein the case differs materially from the instant case, in that such decision turned upon the interpretation of the New York statute, with reference to which the majority opinion states that “persuasive reasons might be marshalled in favor of a decision of the question in either way.” The correctness of this observation is indicated by the fact that of the four judges joining in the judgment two state limited concurrences, while Cardozo, J., announces a dissent in which two judges concur. But in none of those opinions is there any modification of the definition of the practice of law as theretofore announced.
 

 In the case of
 
 Boykin
 
 v.
 
 Hopkins,
 
 174 Ga., 510, 162 S. E., 796, the Supreme Court of Georgia adopts'and applies the definition of the practice of law above quoted. In the opinion, the authorities upon the question are marshalled, and the decisions of the courts succinctly stated. In that case the court had before it the specific challenge of the right of a corporation to engage in any of the practices regarded as coming within the profession of the law, and prevented the grant of such authority by the process of injunction.
 

 It seems too obvious to permit any discussion that a corporation may not be authorized to practice law, and hence should not be permitted to perform, or hold itself out as authorized to perform, any of the acts which constitute the practice of law. It scarcely seems necessary to cite any authority upon this proposition.
 

 
 *30
 
 Compliance with the requirements of statute and the rules of court is a prerequisite to the practice of law. For reasons that are obvious, such compliance by a corporation is impossible.
 

 “Since, as has been seen, the practice of law is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts, and as these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly, it cannot do so indirectly, by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate.”
 
 2
 
 Ruling Case Law, 946.
 

 The clear and comprehensive expression of the New York Court of Appeals in the ease of
 
 In re Co-operative Law Co.,
 
 198 N. Y., 479, 92 N. E., 15, 32 L. R. A. (N. S.), 55, is cited with approval by the Court of Chancery of New Jersey in
 
 Unger
 
 v.
 
 Landlord's Management Corp.,
 
 114 N. J. Eq., 68, 168 A., 229. It is in part as follows:
 

 “The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant. The corporation would control the litigation, the money earned would belong to the corporation and the attorney would be responsible to the corporation only. His master would not be the client but the corporation, conducted it may be wholly by laymen, organized simply to make
 
 *31
 
 money and not to aid in the administration of justice which is the highest function of an attorney and counselor at law. The corporation might not have a lawyer among its stockholders, directors or officers. Its members might be without character, learning or standing. There would be no remedy by attachment or disbarment to protect the public from imposition or fraud, no stimulus to good conduct from the traditions of an ancient and honorable profession, and no guide except the sordid purpose to earn money for stockholders. The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of a money-making corporation engaged not in conducting litigation for itself, but in the business of conducting litigation for others. The degradation of the bar is an injury to the state.”
 

 In this state the formation of a corporation for the purpose of carrying on the practice of a profession is expressly prohibited by statute, Section 8623-3, General Code.
 

 Plaintiffs in error, however, contend that they have been expressly authorized to perform the acts in question by statute, and particularly by Section 9850, General Code, above quoted, even though such acts constitute the practice of law.
 

 It is the view of the writer of this opinion that the matter of admission to practice law is a judicial and not a legislative function and that the following statement in 4 Ohio Jurisprudence, 423, Section 5, is correct:
 

 “In Ohio it is definitely settled that the power to admit attorneys to practice in the courts is exclusively a judicial power and not legislative. Although the legislature may prescribe some requirements as to eligibility, the final admission of attorneys to practice in Ohio, for more than a century has been left to the courts themselves.”
 

 
 *32
 
 There is very substantial authority for the proposition that the power and jurisdiction with respect to the admission of attorneys to practice law are inherent in the court.
 
 People, ex rel. Illinois State Bar Assn.,
 
 v.
 
 Peoples Stock Yards State Bank,
 
 344 Ill., 462, 176 N. E., 901;
 
 In re Opinion of the Justices,
 
 279 Mass., 607, 180 N. E., 725, where it is held that: “Admission to practice as an attorney at law is almost without exception conceded to be a judicial function”, and that the judicial department has inherent power “ultimately to determine the qualifications of those to be admitted to practice in its courts”.
 

 However, there need be no issue here upon this majtter for, under 'the provisions of Section 1698, General Code, that “No person shall be permitted to practice as an attorney and counselor at law * * * unless he has been admitted to the bar by order of the supreme court, or of two judges thereof,” the Legislature recognized the authority of this court to prescribe and publish rules governing same. The essential portion of this statute has been in force since 1804.
 

 We refer to this statute by reason of the contention of plaintiffs in error that the acts which are challenged —and which under the authorities cited we find to constitute the practice of law — are authorized by statute.
 

 It is impossible to bring the several provisions of the statute into harmony in support of that contention. It is obvious that they can be brought into reconciliation only in support of the view that the authority conferred upon plaintiffs in error does not include the practice of law. Indeed, we are of opinion that the language of the statutes upon which plaintiffs in error rely, when the history of their enactment is considered, fails to authorize them to perform the function of furnishing opinions as to the condition or validity of titles to real estate, but only to guarantee titles; and
 
 *33
 
 hence they cannot issue such opinion or certificate thereof except where it is a part of a guarantee of title. The difference between an abstract of title, with a certificate of search of records and investigation, and a statement setting forth an opinion of the validity of title to such real estate, is clearly stated by Thompson on Abstracts and Titles (2nd Ed.), Sections 209 and 810.
 

 The title of the Act which constituted Sections 9850 to 9855, General Code, related to “title guarantee and trust companies”, and in the Act their business was referred to as “the business of guaranteeing titles to real property”.
 

 Prior to 1896, abstract and title companies were evidently operating under Section 3641, Revised Statutes, relating to insurance companies, but there was no express statutory provision with reference to abstract and title companies. On April 27, 1896, the General Assembly passed Supplemental Section 3641-$ (92 Ohio Laws, 321), which required every company organized for the purpose of guaranteeing the titles to real property to make a deposit with the superintendent of insurance. Section 3641-$, Revised Statutes, was repealed on April 22, 1902 (95 Ohio Laws, 223), when the Legislature passed Supplemental Section
 
 3821-ggg,
 
 Revised Statutes, which Supplemental Section was placed among the statutory provisions relating to savings and loan associations and safety deposit and trust companies, which Supplemental Section was carried into the General Code as present Section 9850. As indicating that Section 9850, General Code, relates to guaranteed titles, that section is referred' to in Section 710-169, subjecting such companies to requirements imposed upon commercial and savings banks, and to require reports to and examination by the Superintendent of Banks. These enactments clearly evidence an intent by the Legislature to
 
 *34
 
 classify the function of plaintiffs in error as the business of guaranteeing titles.
 

 The only other matters in controversy which call for further discussion are those relating to escrow agreements and instructions, and the furnishing of opinions pursuant to what is known as Rule 35 of the Court of Common Pleas of Cuyahoga county.
 

 The latter has reference to the furnishing of opinions relative to necessary parties to actions for marshaling liens and foreclosure of liens on real property, at a rate of compensation stated in said rule. It follows from what has been stated that such act constitutes practicing law, and that this is the more objectionable because it is in a matter actually in court. It cannot be validated by an order of the Court of Common Pleas. It amounts to the grant of power to a limited extent to practice law, which it is not authorized to do.
 

 In view of the limitations and exceptions in the order respecting the preparation of escrow agreements and the preparation of legal documents, we find ourselves also in accord with the conclusions of the Court of Appeals in those respects.
 

 Having found that the rights of the plaintiff below and the class represented by him are invaded by the unauthorized acts of the defendants, there must be some remedy therefor. Surely the courts are not impotent to protect those to whom the right to practice law has been granted from the natural and necessary results of the unauthorized exercise of those rights by others, whether they be corporations or individuals.
 

 It is urged that if the offender is a corporation, the proceeding must be in
 
 quo warranto.
 

 In other jurisdictions the unauthorized practice of law has been challenged by actions in injunction and by proceedings in contempt. Such was the case in
 
 People, ex rel. Illinois State Bar Assn.,
 
 v.
 
 Peoples Stock Yards State Bank, supra,
 
 and there the de
 
 *35
 
 fendant was a corporation. The view of the court was thus expressed:
 

 “Of what avail is the power to license in the absence of power to prevent one not licensed from practicing as an attorney? In the absence of power to control or punish unauthorized persons who presume to practice as attorneys and officers of this court the power to control admissions to the bar would be nugatory.”
 

 It is quite generally held that the right to practice law conferred by the state is a special privilege in the nature of a franchise, and that the holder thereof may be protected from the invasion of the right thus vested in him. The adequate remedy for such invasion is by injunction, and that is so whether the transgressor is an individual or a corporation, though as to the latter, as contended,
 
 quo warranto
 
 would lie.
 

 A recent ease directly in point is that of
 
 Unger
 
 v.
 
 Landlords’ Management Corp., supra,
 
 where the court held that the right to practice law exists by virtue of a license from the state and may be protected from unlawful encroachment by injunction, though the act complained of is a violation of statute which prescribes a penalty.
 

 For the reasons stated the finding and order of the Court of Appeals in each of the above cases is in all respects affirmed.
 

 Judgments affirmed.
 

 Stephenson, Bevis and Zimmerman, JJ., concur.
 

 Wilkin, J., concurs in propositions 1, 2, 3, 4, 5 and 6 of the syllabus and in the judgment.
 

 Jones, J., concurs in propositions 1, 2, 3 and 6 of the syllabus.
 

 Weygandt, C. J., not participating.