LATTIN, APPELLANT, *v.* McMILLEN ET AL., SPECIAL MASTER COMMISSIONERS, ET AL., APPELLEES.

(No. 2809—Decided March 4, 1958.)

*Mr. Richard O. Kuhn,* for appellant.

*Mr. L. B. McMillen, Mr. Robert Shockling, Mr. Nick Caplea* and *Mr. John F. Cholley,* for appellees.

*Mr. Phillip K. Folk,* for Ohio State Bar Association.

PUTNAM, J. This is an appeal on questions of law from an order of the Common Pleas Court in cause No. 98433, which treated a motion to dismiss a temporary injunction therein granted as a demurrer, sustained it, and dismissed the petition. The sole assignment of error is the legality of that action. The main point stressed in this appeal is the legality of the method of procedure followed in a previous cause No. 98193, in investigating the alleged unauthorized practice of law in Stark County.

A brief history of these proceedings will serve to pinpoint the problems under consideration. On January 22, 1957, the Executive Committee of the Stark County Bar Association filed a petition in the Common Pleas Court, cause No. 98193, in which it asked the court to investigate the unauthorized practice of law in Stark County. The petition was styled "In the Matter of the Unauthorized Practice of Law in Stark County." No defendants were named. On the same date a journal entry was filed appointing special master commissioners, presumably either under Section 2315.41, Revised Code, or under the inherent powers of the court, giving the commissioners, the defendants in the instant case, broad powers to investigate the

unauthorized practice of law in the county. The commissioners were duly sworn, but no bond was required and none given. The powers given the commissioners were as follows:

"1. Investigate and prosecute all such practices, their extent, the individuals involved therein and the specific cases involved in such practices as may involve the unlawful and unauthorized practice of law by individuals or corporations, as set forth in the petition therein, whether said practices heretofore existed, now exist, or do hereafter occur.

"2. Issue subpoenas, administer oaths to witnesses and examine them under oath; issue subpoenas *duces tecum* for the production of books, printed matter, papers or other documentary evidence pertinent to such inquiry, and they are further hereby empowered to punish for contempt any person violating any order or writ issued by them.

"3. File such reports from the evidence obtained, together with their recommendations, with this court at such times as the commissioners deem appropriate for such further action as the court deems necessary and proper.

"4. To sit and conduct hearings and exercise the powers herein given them in groups of two (2) or more, and any one (1) member of said Special Master Commissioners be and hereby is empowered to issue subpoenas, enforce attendance thereon and administer oaths to witnesses as set out herein.

"The said commissioners are granted the privilege of the services of the official shorthand reporters at all times during all of said hearings and such shorthand reporters may be had for such hearings as may from time to time be required by said commission or commissioners, and the costs of any transcripts of evidence necessary in the judgment of the commission or commissioners or the court shall be paid out of the county treasury as authorized and required by law."

Thereafter, on March 5, plaintiff, appellant herein, was subpoened to appear before the commissioners and bring with him "copies of his business cards, stationery, all forms used by him in processing claims before the Industrial Commission of Ohio or the Administrator of the Bureau of Workmen's Compensation and other books or records he might have in con-

nection therewith." On April 8 the appellant appeared and testified. On April 12 he filed in the Court of Common Pleas cause No. 98433, a petition for injunction. The petition alleges in substance that the plaintiff is a consultant concerning claims before the Industrial Commission and the Bureau of Workmen's Compensation of Ohio and that he is licensed for that purpose. Plaintiff then alleges most of the history above set forth and states further, in substance, that the court's action in appointing the commissioners and defining their duties was unauthorized and contrary to law and that the hearing was not conducted in conformity with established judicial procedure. He alleges further that undue publicity was given to the hearing in a manner detrimental to himself and his reputation and that he has no adequate remedy at law. The prayer of the petition is as follows:

"Wherefore, this plaintiff prays that a temporary restraining order be granted herein, without notice, restraining and enjoining the defendants, L. B. McMillen, Nick Caplea, Robert Shockling and Emil N. Albu from maintaining, carrying on or proceeding in any way with the investigation hereinbefore referred to and that upon hearing herein, said temporary restraining order be made permanent and the Special Master Commission be dissolved and for such other and further relief as may be just and proper in the premises and his costs herein expended."

A temporary restraining order was granted. Later, the defendants moved for a dissolution thereof and a dismissal of the petition. This motion, at the insistance of the plaintiff, was treated as a demurrer. The demurrer was sustained. This appeal on questions of law results.

However, at the same time that that action was journalized, the court journalized an order in cause No. 98193, which limited the powers of the commissioners as follows:

"Fifth: That the hearings before the commissioners shall be closed to any person or persons other than the commissioners, court constable, official stenographer and witnesses called to testify.

"Sixth: That all matters, findings and things pertaining

to any investigation and information obtained therefrom including names of individuals or corporations, shall be kept secret and not divulged to anyone except this court.

"Seventh: That the investigation shall be confined to the unlawful and unauthorized practice of law and no inquiries shall be made as to the finances of or fees or compensation charged by the individual or corporation being investigated."

It can readily be seen from the allegations in the petition and the prayer thereof that the plaintiff's position is three-fold: First, that the court has no inherent right outside of specific statutes, none of which apply herein, to conduct a general investigation into the unauthorized practice of law in a proceeding in which no definite parties are named; second, that if the court has such right, it has no power to conduct such investigation through a master or special commission or other court appointed investigating body; and third, that the powers originally delegated to the special commissioners in the instant case were too broad and that they were abused.

Although obvious, it is well to point out here that the right of the plaintiff to practice and to appear before the bodies above mentioned is not involved. There has been no determination of that question, which if ever made by a judicial tribunal will be subject to review by higher courts and all rights of the plaintiff fully protected. In this connection, attention is directed to the case of *Goodman* v. *Beall,* 130 Ohio St., 427, 434, 200 N. E., 470, where it is stated:

"Our conclusion is that appearances and practice before the Industrial Commission do not ordinarily or properly constitute the practice of law up to the time when a claimant first receives notice of the disallowance of his claim under Section 1465-90, General Code, and are subject to the regulation and control of the Industrial Commission as granted by statute. Thereafter, rehearing proceedings before the commission do constitute the practice of law and must be conducted exclusively and personally by an attorney or attorneys at law, duly admitted to practice, and the defendants are therefore prohibited from recognizing or entertaining representation, in the particular noted, by those failing to meet such qualification."

The first proposition above set forth will now be considered, viz; does the Common Pleas Court have a right, either upon proper application or *sua sponte*, outside specific statutory provisions, to conduct a general investigation as to the unauthorized practice of law in its jurisdiction, in a proceeding in which no parties are named? In the case of *Judd* v. *City Trust & Savings Bank*, 133 Ohio St., 81, 12 N. E. (2d), 288, it was held in the first paragraph of the syllabus:

"In Ohio, the power to regulate, control and define the practice of law rests inherently in the judicial branch of the government."

See, also, the case of *Land Title Abstract & Trust Co.* v. *Dworken*, 129 Ohio St., 23, 193 N. E., 650. This broad power is pronounced irrespective of statute and must of necessity extend not only to attorneys at law, officers of the court, but also to all assuming to exercise the privileges and prerogatives of the practice of law.

In the case of *Morton* v. *Berry*, 15 Ohio Law Abs., 497, the same constitutional and statutory questions were raised as are raised in the instant case as to the inherent power of the court in such matters. Judge Stevens in an able opinion thoroughly analyzes the question that such a proceeding is a special proceeding and comes to the conclusion that such inherent powers exist. The first three paragraphs of the headnotes in that case are as follows:

"1. Special proceedings are those proceedings cognizable by the courts which do not strictly or properly fall within the category of civil actions.

"2. When a court is exercising its inherent powers in a manner not defined or provided for by a general or special statute the proceeding is a special proceeding.

"3. A proceeding instituted in the Court of Common Pleas by petition of the members of a bar association on behalf of themselves and others associated with them as members of the bar association for an inquiry into the unauthorized practice of the law gives the court jurisdiction to conduct the inquiry and render a judgment against an individual summoned in such proceeding restraining the unauthorized practice."

With the reasoning and conclusion in that case we are in accord, and, without further quotation therefrom, reference is made thereto.

See, also, the case of *In re Petition for Inquiry into Certain Practices,* 150 Ohio St., 393, 83 N. E. (2d), 58.

The only difference between the *Morton case, supra* (15 Ohio Law Abs., 497), and the instant case is that in the *Morton case* the investigation was conducted by a member of the court, while in the instant case the investigation was conducted by a court appointed commission. That brings us to the second proposition involved, viz; if a court has an inherent right to conduct such an investigation, must it do so without the assistance of a committee, commission or other arm of the court?

Our answer to this proposition is an emphatic "No." It would be a strange theory of jurisprudence and contrary to the historical development of the courts if they should be so handicapped in their work. The inherent powers of the court are derived from the common law, equity jurisprudence and the constitutional separation of the legislative, executive and judicial powers. If a court has the inherent right to do certain things it has the inherent right to prescribe the method by which those things are to be accomplished so long as the constitutional rights of the affected individual are not invaded and the procedure is not contrary to a statute which does not interfere with the constitutional and inherent rights of the courts. We find no statutory inhibition in this case but rather a permissive statute, to wit, Section 2315.41, Revised Code, which reads as follows:

"The court may appoint a special master commissioner, who shall be sworn faithfully to discharge his duties, and who may administer all necessary oaths on any hearing before him."

The invasion of no constitutional rights of the plaintiff below has been pointed out, and we find none as far as the general appointment of the commission is concerned.

This brings us to the third proposition, to wit, did this commission conduct its hearings in accordance with such procedure so as to warrant a restraint thereof? While a record of these proceedings was taken, of course, it is not before us in

this proceeding. Nevertheless for the purpose of the demurrer the allegations of the petition with reference to the irregular nature of the proceedings must be taken as true. Moreover, the very fact that the Common Pleas Court *en banc* saw fit further to circumscribe the powers of the commissioners is conclusive evidence that they considered the previous actions of the commission not in strict accordance with proper judicial proceedings. This action possibly came from the pronouncement of Chief Justice Cardozo in the case of *People, ex rel. Karlin,* v. *Culkin, Sheriff,* 248 N. Y., 465, 162 N. E., 487, 60 A. L. R., 851, wherein, at pages 478 and 479, the court among other things states:

"The argument is pressed that in conceding to the court a power of inquisition we put into its hands a weapon whereby the fair fame of a lawyer, however innocent of wrong, is at the mercy of the tongue of ignorance or malice. Reputation in such a calling is a plant of tender growth, and its bloom, once lost, is not easily restored. The mere summons to appear at such a hearing and make report as to one's conduct, may become a slur and a reproach. Dangers are indeed here, but not without a remedy. The remedy is to make the inquisition a secret one in its preliminary stages. This has been done in the first judicial department, at least in many instances, by the order of the justice presiding at the hearing. * * *."

This question is now one of procedure, which for all intents and purposes has become moot. The Common Pleas Court upon hearing the demurrer and motion to dismiss might well have sustained the injunction in part and overruled it in part, in other words modified the same and made it permanent as to the abuses of procedure. It could have held that the court had the inherent power to investigate generally the unauthorized practice of law and to do the same through a commission, but it held that the action of the commission in holding open hearings and divulging information thereof was improper. The court accomplished the same purpose by a separate journal entry restricting the powers of the commission. Since the main purpose of this appeal is to test the general inherent powers of a Court of Common Pleas to institute a general investigation of the unauthorized practice of law through a special commis-

sion, an arm of the court inherent therein, we do not deem it necessary or expedient to be too technical about the method pursued by the court below. We are aware of the fact that the appellant herein, while insisting in the court below that the motion to dismiss be treated as a demurrer, also insisted that a hearing be had upon the merits as to the abuse of procedure and the publicity by the commission. It would subserve no useful purpose to stand upon this technicality. That abuse has been corrected, and, as above stated, we think the question is moot.

A due regard to the dignity of the legal profession and its service to the public, which is under constant attack by many whose motives are questionable, requires that the courts and their officers, the lawyers, through their bar associations, be not unduly restricted but encouraged in those activities which are designed not only to police their own members but also those who seek the privileges and prerogatives of lawyers without being members of the profession. The system pursued in the instant case seems to us well adapted to that end and well within the inherent powers of the court. However, the abuses pointed out by the plaintiff and corrected by the court should be ever kept in mind. These preliminary investigations, like grand jury proceedings, should in their preliminary stages be always secret until such time as final charges are placed against an individual. When that is done, the ordinary processes of law will protect the individual. The courts should ever be diligent to supervise their commissioners so that they do not use their power to vent personal spleen or use the same to persecute, but use such powers rather in the high and broad purpose ever to make the legal profession such as to command the highest respect of the public.

The judgment is affirmed.

*Judgment affirmed.*

McClintock, P. J., concurs.
McLaughlin, J., not participating.