Bar Association of Greater Cleveland et al. *v.* Brunson et al.

[Cite as Bar Association v. Brunson (1973), 37 Ohio Misc. 61.]

(No. 916,473—Decided October 30, 1973.)

Court of Common Pleas of Cuyahoga County.

*Mr. John A. Murphy, Jr., Mr. Fred Weisman* and *Mr. James M. Wilsman,* for plaintiff.

McMonagle, J. 1. This is an action in which the plaintiffs, who are the major bar associations in Cuyahoga County, Ohio, filed a complaint asking that the court permanently enjoin the defendant, who is not licensed to practice law, from engaging in practices which the plaintiffs claim constitute the practice of law. While defendants are referred to in the pleading, there is actually only one defendant—Thurman Brunson, who has apparently been doing business under the name of Brunson Independent Adjustment Company and City-Wide Claim Consultants. The matter has now come before the court on the plaintiffs' motion for summary judgment.

2. A stipulation granting leave to the defendant to move or plead herein was filed with the court on May 13, 1973, showing Myron C. Hoff as attorney for the defendant. The deposition of the defendant was taken by the plaintiffs

on May 30, 1973, at which he was represented by Mr. Hoff. Mr. Hoff subsequently withdrew as counsel for the defendant. No responsive pleadings have been filed herein but notice was duly given to the defendant personally and to Mr. Hoff of the proceedings.

3. Plaintiffs have filed with the court, in support of their motion, a transcript of the said deposition together with a transcript of proceedings of the Unauthorized Practice of Law Committee of the Cuyahoga County Bar Association held on February 12, 1973, and attended by the defendant Thurman Brunson and the committee members, namely:

Frank Mancino, Chairman
John A. Murphy, Jr.
William Westley, II
John Preston
Robert Fay
Fred Weisman
Russell R. Baron
Theodore A. Gulia, Jr.
Austin Klein

4. It is the claim of the plaintiffs that the acts of the defendant which constitute the unlawful practice of the law consisted of his having solicited the representation of persons with bodily injury claims for the purpose of representing them in the evaluation, investigation and negotiation for settlement and in the settlement of their claims; his advertising in newspapers and otherwise offering such services. There is further the claim of the plaintiffs that the defendant had actually undertaken the representation of such claimants and had obtained medical reports in their behalf and had contacted witnesses and had actively negotiated with insurance companies as a representative of bodily injury claimants and did ultimately settle some bodily injury claims for claimants who were charged a fee by the defendant.

5. The defendant, while denying that there is anything illegal about his activities or his business, did admit the performance of the acts complained of, in his deposition at page 163, as follows:

"Q. You do state to the individual claimant your evaluation of the claim, do you not?

"A. Yes.

"Q. Your opinion as to value?

"A. Yes. I show them what I believe the value is.

"Q. And you set forth your opinion as to value to the insurance carrier in a writing later?

"A. On the personal injury sheet, yes.

"Q. And before you ever decide the value, all these various factors that you talked about are important, and even others that you mentioned in your testimony here today, if I am not mistaken

"You mentioned the statute of limitations. Now, for example, with respect to the little boy, what was the statute of limitations in his case?

"A. Which little boy?

"Q. Some little boy was struck by a car and—

"The Witness: Now, you say what the statute of limitations on that is?

"Q. Yes. Two years for a child?

"A. Not for a child, but for his mother or his father. His mother is responsible for the child.

"Q. So the statute of limitations would be on the mother's claim or father's claim for expenses incurred for the care of the child; is that what you mean?

"A. For the child, because they are responsible, yes. The child can't initiate a suit.

"Q. Well, what would the statute of limitations be for the mother or father in their claim for the medical expenses incurred on behalf of the child?

"A. For the medical expenses incurred?

"Q. Yes.

"A. Just the medical expenses.

"Q. Well, is there any other right the mother has that you know of or that the father has if a child is hurt?

"A. Well, I have known the child to be compensated for pain and suffering and all the rest, not just the medical.

"Q. That would be the child's claim?

"A. Yes.

"Q. Now, the father's claim, if the father incurred

expense for the little boy that was hit by the car, what would the statute of limitations be for the father, to incur his medical expenses among other things, that he might be entitled to recover for?

"A. Really, I don't understand your question. I know two years is the statute of limitations, as I stated before."

The answers of the defendant with reference to the statute of limitations obviously established that he did not know the law with reference to the subjects he discussed.

The following appears in defendant's deposition, at page 167 with respect to his activities:

"Q. You have also advertised in the Yellow Pages of the telephone book, have you not?

"A. Yes.

"Q. And that advertisement was placed by you and it concerns the Brunson investigating company?

"A. Yes."

6. The defendant published and distributed brochures in which he outlined the services he was offering, as follows:

Plaintiff's Exhibit No. 1—Questions and Answers contained in Brochure

"Q. What is the purpose of City-Wide Claim Consultants?

"A. The purpose of City-Wide walk in claim service is to offer a prospective claimant the chance to find out what the fair value of his claim is and to give you, the insurance company, a chance to settle quickly.

"Q. Being a new service of this type, how do you inform the community about it?

"A. We advertise locally in the newspapers and radio. If a person is involved in an accident, he can come to our office and have his claim evaluated.

"Q. Can anyone do this?

"A. No. Only a claimant that was injured due to an insurance negligence. There must be no dispute as to liability.

"* * *

"Q. How does this service work?

"A. When a prospective claimant walks into our office, he must bring with him proof of medical expenses and all

other losses incurred as a result of his accident. The claim is discussed between the claimant and consultant. A liability check is made with the insurance company to find out if their insured was liable for the accident or how much liability lies on the part of the insured. A letter in statement form, proof of all losses incurred and an evaluation sheet is sent to the insurance company. If the company wants to settle with the claimant, then they may send their draft for the amount specified and one full and final release for settlement. These items will be sent to the claimant in care of City-Wide Claim Consultants. Our office will assume responsibility for the signing and returning of their release.

"Q. How is City-Wide paid for their services?

"A. We charge the claimant $25.00 for consultation and $50.00 for claim evaluations. The $50.00 is paid only upon settlement of their claim as a result of our evaluations. This is a flat fee regardless of how much the settlement amount is."

Plaintiff's Exhibit No. 2—Brochure

"Q. What type of service is performed by City-Wide?

"A. We are qualified insurance adjusters who understand the problems of claim settlements between the community and the insurance industry. We evaluate claims for their fair value.

"Q. Who can benefit by this service?

"A. Anyone who receives injury and damage as the result of another party's negligence.

"Q. If I have an attorney, can I still use your services?

"A. No. Attorneys have the right to pursue a claim once a person retains them.

"Q. When is the time to use your services?

"A. As soon as you are released from your doctor and have acquired all of your out of pocket expenses. And feel that you are ready to settle.

"Q. What items must be brought to your office?

"A. You must bring all of your medical bills and all other proof of losses incurred.

"Q. How much does this cost me?

"A. We charge a small fee for counseling and claim evaluation."

Plaintiff's Exhibit No. 3 is a copy of an advertisement or flyer with a picture of Mr. Brunson on it.

Plaintiff's Exhibit No. 4 is a copy of an advertisement defendant placed in the Cleveland Press.

The following is a copy of a letter from the defendant dated March 13, 1973, to John A. Murphy, one of the members of plaintiffs' committee.

Telephone 781-6966
BRUNSON INDEPENDENT INVESTIGATIVE CO.
*Specializing in Insurance and Plaintiff Cases*
1276 West 3rd Street, Marion Bldg. Room 319
Cleveland, Ohio 44113
THURMAN BRUNSON, Owner
March 13, 1973

Mr. John A. Murphy
Suite 760—
14701 Detroit Ave.
Lakewood, Ohio 44107
Dear Mr. Murphy:
In regard to your recent letter concerning the activity's of this office.

There have been a considerable amount of my time and the time of others as well as money that have gone into making this service available to the community. We feel that we have the necessary background and knowledge and also the right to evaluate insurance claims for any person that has a valid claim against an insurance company or self insurer.

We also feel that we need no authorization from the Bar Association or Insurance Companies to offer this service to any prospective claimant. The meeting that we had together recently have been taken under consideration and some minor changes in procedure have been made as a result of but we do not intend to close our doors to the community. Thank you.
Sincerely yours,
/s/ Thurman Brunson
Thurman Brunson
TB/eas

7. It is the claim of the plaintiffs that the described activities constitute the unauthorized practice of law and are in direct violation of R. C. Chapter 4705 and controlling decisions of the Ohio Supreme Court, as follows:

R. C. 4705.01 provides, in pertinent part:

"No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name or the name of another person, unless he has been admitted to the bar by order of the Supreme Court in compliance with its prescribed and published rules. * * *"

*Judd* v. *City Trust & Savings Bank* (1937), 133 Ohio St. 81, states, in paragraphs one and three of its syllabus:

"In Ohio, the power to regulate, control and define the practice of law rests inherently in the judicial branch of the government."

"The practice of law consists essentially of the performance of legal services for others. * * *"

In *Land Title Abstract Co.* v. *Dworken*, 129 Ohio St. 23, the court held, as follows:

"The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law." *Id.*, paragraph one of the syllabus.

"The right to practice law conferred by the state is a special privilege in the nature of a franchise and a possessor thereof may be protected by injunction from the invasion of the right thus vested in him." *Id.*, paragraph seven of the syllabus.

"There is little support for the contention that the practice of law is limited to the conduct of cases in court; on the contrary it is held to have a much wider scope.

"The practice of law is 'as generally understood, the doing or performing services in a court of justice, in any

matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court.' 49 Corpus Juris, 1313, Section 5." *Id.*, at page 28.

"Having found that the rights of the plaintiff below and the class represented by him are invaded by the unauthorized acts of the defendants, there must be some remedy therefor. Surely the courts are not impotent to protect those to whom the right to practice law has been granted from the natural and necessary results of the unauthorized exercise of those rights by others, whether they be corporations or individuals." *Id.*, at page 34.

"In other jurisdictions the unauthorized practice of law has been challenged by actions in injunction and by proceedings in contempt. Such was the case in *People, ex rel. Illinois State Bar Assn.*, v. *Peoples Stock Yards State Bank, supra,* and there the defendant was a corporation. The view of the court was thus expressed:

" 'Of what avail is the power to license in the absence of power to prevent one not licensed from practicing as an attorney? In the absence of power to control or punish unauthorized persons who presume to practice as attorneys and officers of this court the power to control admissions to the bar would be nugatory.'

"It is quite generally held that the right to practice law conferred by the state is a special privilege in the nature of a franchise, and that the holder thereof may be protected from the invasion of the right thus vested in him. The adequate remedy for such invasion is by injunction, and that is so whether the transgressor is an individual or a corporation, though as to the latter, as contended, *quo warranto* would lie." *Id.*, at pages 34-35.

The case of *State, ex rel. Junior Assn. of Milwaukee Bar*, v. *Rice* (1940), 236 Wis. 38, 294 N. W. 550, contains the following headnotes in the Northwestern Reporter:

"4. Attorney and client

"Each case of allegedly unauthorized practice of law is to be determined largely upon its own particular facts.

"6. Attorney and client

"Rendering legal advice for compensation constitutes the 'practice of law.' St. 1937 Section 256.30(2).

"11. Attorney and client

"Action of licensed insurance adjuster in advising or offering to advise insurance companies, claimants or third persons of their respective rights arising out of or by reason of a contract of liability, casualty, fire or indemnity insurance existing between any insurance company and another constituted the improper 'practice of law.' St. 1937. Sections 102.17(i)(am), 201.04(15), 203.24(1), 256.30(2).

"14. Attorney and client.

"Action of a licensed insurance adjuster in preparing contract or agreement for settlement or compromise of claim made against insurance companies employing him would constitute improper 'practice of law.' St. 1937, Sections 201.04(15), 203.24(1), 256.30(2)."

8. While R. C. 4705.01 makes it unlawful for anyone to engage in the practice of law without having been certified to do so by the Supreme Court of Ohio, the statute does not contain a penalty section. It would appear, therefore, that the injunctive procedure invoked herein constitutes the sole procedure for stopping the unauthorized practice.

9. The complaints of the plaintiffs herein are concerned with the representation, by a layman, of a personal injury claimant. R. C. Chapter 3951 does provide for the licensing of a non-lawyer as a public insurance adjuster. The code, in R. C. 3951.01, restricts the activities of those so licensed to acting "* * * on behalf of * * * an insurer or insured or another in negotiation for, or affecting the settlement of a claim * * * for loss or damage under any policy of insurance covering *real or personal property*, and any person, * * * who advertises, solicits business, or holds out to the public as an adjuster of such insurance claims, and any person who for compensation investigates, adjusts, advises, or assists an insurer or insured with reference to

claims for such losses [to real or personal property], on behalf of any such public insurance adjuster." (Emphasis added.)

10. The Supreme Court of Ohio, in the *Judd* case, *supra* (133 Ohio St. 81), has specifically declared that, "the power to regulate, control and define the practice of law rests inherently in the judicial branch of the government."

11. The applicability or validity of provisions of R. C. Chapter 3951 is not an issue herein. The within action does not involve the activities of a person who has been licensed under R. C. Chapter 3951—the defendant is not so licensed—nor is it concerned with the representation of a person making a claim for loss or damage under any policy of insurance covering real or personal property.

12. The activities complained about are those herein before specified and are all related to the efforts of the defendant to procure and represent clients who have bodily injury claims for the purpose of evaluating their claims, representing them in negotiations with a defendant and charging a fee for such services.

13. It is impossible to perceive of any activities (other than actually representing claimants in court proceedings or before certain administrative bodies) which constitute the practice of law other than those which the defendant herein acknowledged.

14. Since the activities charged to the defendant relate to the representation of a bodily injury claimant and consist of doing all things, except the institution and prosecuting of a lawsuit, necessary and proper for the representation of a bodily injury claimant, the court is not inclined to authorize one or more of the activities complained of being separate from the others.

15. The court finds that the activities of the defendant do constitute the unlawful practice of law; that the defendant has been and is engaged in such unlawful practice and that he should be permanently enjoined as to such activities.