**In re Valerie FERGUSON, Debtor.**

**No. 04–64327.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 24, 2005.

Gerald Golub, North Canton, OH, for debtor.

Claimant Marshall Brown, pro se.

## MEMORANDUM OF DECISION

RUSS KENDIG, Bankruptcy Judge.

This case is before the court upon the objection of Valerie Ferguson ("debtor") to

the claim of Marshall Brown. For reasons that follow, debtor's objection is **SUSTAINED.**

## I. *JURISDICTION AND VENUE*

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district on July 16, 1984. This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409(a).

## II. *BACKGROUND*

Debtor filed her petition on August 15, 2004. The schedules accompanying the petition disclose debtor's interest in her home, which she valued at $66,000. The residence is encumbered by two mortgages totaling $71,806. Debtor scheduled unsecured nonpriority claims of $1,687 for balances owed on three credit cards.[1] In order to net monthly income of $1,600 before living expenses debtor maintains two jobs—working simultaneously as operations assistant for a transportation company and as a banquet server at a local hotel. Debtor's statement of financial affairs reveals that her bankruptcy petition was preceded by a foreclosure action initiated on June 8, 2004. The foreclosure ended with a default judgment entered on August 17, 2004 and the property was scheduled to be sold at a sheriff's sale on November 29, 2004. On September 23, 2004, debtor's counsel filed a suggestion of bankruptcy in the state court proceeding, and debtor's home was withdrawn from the list of properties to be sold by the sheriff.

On December 3, 2004, Marshall Brown ("Brown") filed a claim for $568 for services performed between July 16, 2004 and September 16, 2004. (See Ex. A). Attached to the proof of claim is a Foreclosure Services Agreement and a single page summary that detailed the property address, owner, previous date of transfer, market value, and other information regarding debtor's home ("the property summary"). The Foreclosure Services Agreement ("Agreement") contemplates "loss mitigation and foreclosure negotiation services to be provided by Marshall Brown" who would "negotiate on [debtor's] behalf for the purpose of settling the legal actions, and if possible, to cancel the foreclosure actions." In return for this service debtor agreed to pay a deposit of $300 and an additional amount equal to one percent of either the appraised value or the loan value as stated in the foreclosure complaint, whichever was higher. Debtor was not obligated to pay the additional amount until the foreclosure action was cancelled by the mortgagee. No additional fee was due if the foreclosure was not cancelled. The property summary bears a handwritten notation which calculates a total fee of $668 based upon the appraised value of $66,800, less a $100 credit.

Debtor objected to Brown's claim on March 7, 2005. Debtor stated that the foreclosure proceeding was not cancelled, but merely stayed by operation of 11 U.S.C. § 362 as a result of debtor's bankruptcy petition. Debtor reasoned that the Agreement was never fulfilled because the foreclosure proceeding was not cancelled and accordingly, debtor has no obligation to pay Brown.

---

1. The total amount of allowed unsecured claims, excluding the claim at issue here, is $989.76. The overwhelming majority of debts scheduled and claims filed are those secured by debtor's home. It is clear that the primary reason for debtor's chapter 13 case is her desire to save her home.

Brown responded that the status of the foreclosure proceeding in the state court docket is "closed" and that the property was withdrawn from sheriff's sale. Brown argued that his claim should be allowed.

Following Brown's response, debtor's objection was set for a hearing on April 18, 2005. Debtor appeared and presented the same arguments that appeared in her written objection. Brown did not appear.

## III. *DISCUSSION*

### A. *Issues Presented*

Debtor has raised the issue of whether Brown is entitled to payment for services because the foreclosure proceeding was not cancelled by the plaintiff. In addressing debtor's objection the court must evaluate the nature of the agreement and the services Brown purported to offer. This, in turn, requires an inquiry about whether Brown seeks compensation for the unauthorized practice of law.

### B. *Case Law and Analysis*

■ A bankruptcy court has the power to regulate the practice of law in the cases before it. *United States v. Johnson*, 327 F.3d 554, 560 (7th Cir.2003), *cert. denied sub. nom., Robinson v. United States*, 540 U.S. 1111, 124 S.Ct. 1087, 157 L.Ed.2d 900 (2004). The overwhelming majority of reported cases dealing with the unauthorized practice of law in the bankruptcy context arise from motions filed by the United States Trustee to sanction bankruptcy petition preparers for the unauthorized practice of law. However, bankruptcy courts have recognized the potential for abuse where a nonattorney or any other individual purporting to be a "foreclosure negotiator" or "foreclosure mediator" inserts himself (generally for a fee) between a debtor and a foreclosing creditor. The negotiation process is usually unsuccessful, resulting in a poorly prepared bankruptcy petition that does debtor more harm than good. *See e.g., In re France*, 271 B.R. 748 (Bankr.E.D.N.Y.2002) (real estate broker who also prepared bankruptcy petitions was enjoined from offering financial or consulting services to any person suffering the prospect of a foreclosure judgment and charging a fee in connection with any of those services); *In re Ali*, 230 B.R. 477 (Bankr.E.D.N.Y.1999) (foreclosure consultant who advised debtors and prepared skeletal bankruptcy petitions engaged in the unauthorized practice of law); *In re Carlos*, 227 B.R. 535 (Bankr.C.D.Cal.1998) (law firm that allowed a nonattorney to negotiate a debt reaffirmation agreement engaged in the unauthorized practice of law).

In this case, Brown claimed to provide unsuccessful foreclosure services, but avoided compounding the damage he had already caused because he did not thereafter participate in filing debtor's bankruptcy. Nonetheless, debtor was prejudiced in the time period she received those "services." It was thirty-two days after Brown arrived on duty that debtor had a default judgment taken against her. This resulted in a final judgment that permanently prejudiced her position and created additional expenses that now will be paid with her mortgage lender's claim.

■ Bankruptcy courts issue orders when necessary to give full effect to the determinations of state courts regarding the unauthorized practice of law. *See In re Sanders*, 2000 WL 329574, No. 99 B 9876 (Bankr.N.D.Ill. Mar. 2, 2000) (Chapter 11 debtor had trustee appointed because debtor, who had been ordered to cease "foreclosure mediation and negotiation" by the state court as unauthorized practice of law, continued to do so). In determining what amounts to the unauthorized practice of law, bankruptcy courts

turn to the laws of the locus state. *See In re Skobinsky,* 167 B.R. 45, 49 (E.D.Pa. 1994); *In re Campanella,* 207 B.R. 435, (Bankr.E.D.Pa.1997): *In re Herrera,* 194 B.R. 178, 191 (Bankr.N.D.Ill.1996); *Foulston v. Jones (In re Robinson),* 162 B.R. 319, 325 (Bankr.D.Kan.1993); *In re Evans,* 153 B.R. 960, 966–67 (Bankr.E.D.Pa.1993); *In re Harris,* 152 B.R. 440, 444 (Bankr. W.D.Pa.1993); *In re Bachmann,* 113 B.R. 769, 772 (Bankr.S.D.Fla.1990).

■ Ohio law defining and prohibiting the unauthorized practice of law applies in this case. The Ohio Constitution vests the regulation of the practice of law in Ohio exclusively in the Ohio Supreme Court. Ohio Const. art. IV, § 5. The unauthorized practice of law consists of rendering legal services for another by any person not admitted to practice law in Ohio. *See Gov. Bar. R. VII(2)(A).* The Ohio Supreme Court has, by its own acknowledgment, defined the practice of law expansively. *Sharon Village Ltd. v. Licking Cty. Bd. of Revision,* 78 Ohio St.3d 479, 678 N.E.2d 932, 934 (1997). The practice of law in Ohio is not limited to the conduct of cases in court, but embraces "the preparation of pleadings and other papers incident to actions," "the management of such actions," and "in general all advice to clients and all action taken for them in matters connected with the law." *Id.* (quoting *Land Title Abstract & Trust Co. v. Dworken,* 129 Ohio St. 23, 193 N.E. 650 (1934) (paragraph one of the syllabus)). The unauthorized practice of law occurs when a non-attorney acts as an intermediary to advise, counsel, or negotiate on behalf of an individual or business in an attempt to resolve a collection claim between debtors and creditors. *Cincinnati Bar. Assn. v. Telford,* 85 Ohio St.3d 111, 707 N.E.2d 462 (1999). The practice of law also encompasses "making representations to creditors on behalf of third parties, and advising persons of their rights, and the terms and conditions of settlement." *Cincinnati Bar Assn. v. Cromwell,* 82 Ohio St.3d 255, 695 N.E.2d 243, 244 (1998). Statements in solicitation letters and other documents provided to a debtor which announce that the intermediary is not an attorney and does not give legal advice do not insulate the intermediary from the unauthorized practice of law. *See Akron Bar. Assn. v. Miller,* 80 Ohio St.3d 6, 684 N.E.2d 288, 291 (1997); *Richland Cty. Bar Assn. v. Clapp,* 84 Ohio St.3d 276, 703 N.E.2d 771, 772 (1998). A non-attorney who offers legal representation to others and draws up the agreements through which he or she will be compensated to secure those legal rights has engaged in the unauthorized practice of law. *See Columbus Bar Assn. v. Purnell,* 94 Ohio St.3d 126, 760 N.E.2d 817; *Cincinnati Bar Assn. v. Estep,* 74 Ohio St.3d 172, 657 N.E.2d 499 (1995).

■ The Agreement between debtor and Brown provided that Brown would "negotiate on [Ferguson's] behalf for the purpose of settling the legal actions, and if possible, to cancel the foreclosure actions." Brown would also "contact the lenders of record and attempt to reach a settlement that is acceptable to all parties." Therefore, Brown intended to insert himself between debtor and the mortgage company as an intermediary to advise, counsel, and negotiate on her behalf. A non-attorney who attempts to settle a pending lawsuit on behalf of one of the litigants is engaged in the unauthorized practice of law. *Cromwell* at 244. Drawing logical inferences from the statements present in the Agreement, it is obvious that Brown's activities fall within the unauthorized practice law as defined by the Ohio Supreme Court in *Dworken* and *Cromwell.* It is clearly an effort to advise or negotiate to resolve a collection claim as in *Telford.* As

a non-attorney engaging in the unauthorized practice of law, Brown is not entitled to any fee.

In this case, a non-attorney held himself out as an expert in matters that are clearly legal in nature—precisely the situation that laws governing the unauthorized practice of law are intended to prevent. The Agreement contemplates potential "cancellation" of the foreclosure action. Any court proceeding, once filed, cannot be "cancelled." The only potential *final legal* outcomes are judgment or dismissal. In debtor's foreclosure case the matter proceeded to default judgment approximately one month after debtor signed the Agreement with Brown and gave him $300 to negotiate on her behalf. Oblivious to these legal realities, Brown responded to debtor's objection by insisting that he is entitled to his fee because the foreclosure case is "closed." In support of this statement, he appended a printout from the state court docket and highlighted the case status. Brown's inability to distinguish between a legal outcome and the terms used by the state court in administratively managing its docket underscores his lack of legal knowledge, and the use of the word "cancellation" in the Agreement leads to the inescapable conclusion that this is precisely the type of malfeasance to be prevented by restricting the unauthorized practice of law. Brown dabbles in legal matters for which he is unlicensed and unqualified. Moreover, his inappropriate actions outlined above prejudiced debtor's legal position. Ultimately, debtor's home was saved because she left Brown and hired a lawyer before the wheels of justice ground her down and out of her home.

 Brown demonstrates consummate legal ineptitude by asking the legal system to require that debtor pay additional fees for the unauthorized practice of law. He filed a claim for $568, and also received a retainer of $300 when debtor signed the agreement. Adding these two amounts results in a total fee of $868, yet debtor received no benefit from the illegal services. Debtor had to file a bankruptcy petition to stay the sheriff's sale, and paid her bankruptcy attorney a fee of $1,250. If debtor had paid Brown's entire fee prior to filing her bankruptcy, he would have received nearly $900 for the unauthorized practice of law. Regulations prohibiting the unauthorized practice of law are intended to protect the public from being advised in legal matters by incompetent, untrained, and potentially unreliable persons over whom the judicial branch of government can exercise little control. *In re Rose*, 314 B.R. 663 (Bankr.E.D.Tenn. 2004). Brown falls within that class of untrained persons that unwittingly or wittingly impairs or sacrifices the legal rights of others.

The court **SUSTAINS** debtor's objection to the claim of Marshall Brown. Claim # 7 is **DISALLOWED**.