CLEVELAND BAR ASSOCIATION

v.

YURICH et al.

Board of Commissioners on the
Unauthorized Practice of Law.

No. UPL–93–3.

Decided Sept. 19, 1994.

*Mary L. Cibella, Jones, Day, Reavis & Pogue* and *David A. Kutik,* for relator.
*Robert R. Yurich,* for respondents.

JOHN W. WADDY, JR., Chairman.

This matter came on for an evidentiary hearing before the Board of Commissioners on the Unauthorized Practice of Law ("board") on October 4, 1993 in

Columbus, Ohio, on the formal complaint filed April 29, 1993. Members of the board present and participating in this decision were John W. Waddy, Jr., Chairman, Paul M. Greenberger, Jack R. Baker, Craig D. Barclay, and Paul D. Frankel.

Relator Cleveland Bar Association was represented by Mary L. Cibella, Cleveland, Ohio, and David A. Kutik of Jones, Day, Reavis and Pogue, Cleveland, Ohio. Respondent Robert R. Yurich represented himself and the other respondents, to wit: Dennis Yurich, Yurich and Associates, and Guardian Group.

In its complaint, relator alleges that respondents Dennis Yurich, Yurich and Associates (also known as "Yurich Associates" and "Yurich & Associates") and Guardian Group are not licensed or otherwise authorized to practice law in the state of Ohio and that respondent Robert R. Yurich is an attorney at law licensed and authorized to practice law in the state of Ohio. These allegations were admitted by respondents in their answer, which was filed herein on May 24, 1993. Relator also alleges that respondents Dennis Yurich, Yurich and Associates, and Guardian Group engaged in the unauthorized practice of law by, among other things, rendering legal advice to Ohio residents concerning the need and advisability of various types of trusts; preparing trust documents for Ohio residents; and charging and collecting fees from Ohio residents in exchange for legal services rendered to or on behalf of those individuals. The complaint also alleged that respondent Robert R. Yurich "instigated, assisted, aided and encouraged" the other respondents to engage in the unauthorized practice of law. In essence, relator avers that respondent Robert R. Yurich aided and abetted the other respondents in the unauthorized practice of law.

In their answer, the respondents deny that respondents Dennis Yurich, Yurich and Associates, and Guardian Group had ever engaged in the unauthorized practice of law. Respondents also deny that Robert R. Yurich had ever aided or abetted the other respondents to engage in the unauthorized practice of law.

On May 26, 1993, the parties filed herein a document entitled "Stipulation of Facts and Waiver of Notice and Hearing." By this document, the parties stipulated certain facts and waived their respective rights to an evidentiary hearing before the board. The parties stipulated [1] that:

"1. The Relator is an association whose members include attorneys-at-law, most of whom are practicing in Cuyahoga County, Ohio.

---

1. The board remains mindful that "[i]n all cases coming before this Board on stipulations by the parties, the Board is required to make its own determination of whether the facts support a finding that the unauthorized practice of law has been committed." *Disciplinary Counsel v. Brown* (1992), 61 Ohio Misc.2d 792, 794, 584 N.E.2d 1391, 1392.

"2. Respondent Robert Yurich is an attorney at law licensed to practice in the State of Ohio.

"3. Respondent Dennis Yurich is an individual and is not licensed or otherwise authorized to practice law in the State of Ohio.

"4. Respondent Yurich & Associates is or was a corporation organized under the laws of the State of Ohio. With the assistance of Respondent Robert Yurich, Yurich & Associates was formed by Respondent Dennis Yurich, who was also a director, officer and stockholder of that corporation. Respondent Yurich & Associates was not licensed or otherwise authorized to practice law in the State of Ohio.

"5. Respondent Guardian Group is a corporation organized and existing under the laws of the State of Ohio. Respondent Guardian Group is a successor to Respondent Yurich & Associates through a name change or otherwise. Respondent Guardian Group is not licensed or otherwise authorized to practice law in the State of Ohio.

"6. Respondents Dennis Yurich, Yurich & Associates and Guardian Group participated in an effort to market 'living trusts' which would be prepared, at least in part, by Respondent Robert Yurich. As part of this effort, Respondent Dennis Yurich, through Respondents Yurich & Associates and Guardian Group, hired 'representatives,' many of whom were not licensed or otherwise authorized to practice law in the State of Ohio. Respondents Dennis Yurich, Yurich & Associates and Guardian Group, or representatives hired by them, organized seminars to explain the alleged benefits of 'living trusts.' Respondent Robert Yurich was the principal speaker at these seminars. Persons attending these seminars were asked to indicate whether they would want a 'consultation' regarding 'living trusts.' Following the 'leads' procured through these seminars or procured otherwise, the representatives of Respondents Yurich & Associates and Guardian Group would:

"a. provide advice to persons regarding the merits of a 'living trust' for those persons' specific circumstances;

"b. pursuant to forms and guidelines developed by Respondents Robert Yurich and Dennis Yurich collect information to be used to prepare a 'living trust' document; and

"c. collect checks for Respondents Yurich & Associates and Guardian Group and, on occasion, for Respondent Robert Yurich.

"7. The information and monies collected by the representatives of Respondents Yurich & Associates and Guardian Group were sent to Respondents Robert Yurich and Dennis Yurich who developed, respectively, (a) 'living trust' and other legal forms and (b) computer programs to generate these forms for specific

individuals. Upon receiving the client information collected by the representatives, Respondents Dennis Yurich, Yurich & Associates or Guardian Group would enter the data in a computer and generate 'living trusts' and other legal documents for individuals residing in the State of Ohio. These documents would then be reviewed by Respondent Robert Yurich. In a majority of instances, Respondent Robert Yurich personally met with individuals after the documents were prepared and assisted the individuals with the execution of the documents. On a few occasions, however, Respondent Robert Yurich did not personally meet with the individuals; all personal dealings with the individuals (including execution of the documents) were handled by representatives of Respondents Yurich & Associates or Guardian Group.

"8. Relator believes that: (a) The activities of Respondents Dennis Yurich, Yurich & Associates and Guardian Group constitute the unauthorized practice of law through, inter alia, providing legal advice and preparing legal documents; (b) Respondent Robert Yurich instigated, assisted, aided and encouraged this unauthorized practice of law; and (c) Respondents will continue to engage in or otherwise aid and encourage the unauthorized practice of law unless permanently enjoined.

"9. Respondents have agreed to refrain henceforth from conduct which constitutes the unauthorized practice of law.

"10. Further, the parties hereby waive their right to notice of and appearance before this board."

The board adopts the stipulation of facts to the extent stated hereinafter.

In their stipulation, the parties waived their respective rights to an evidentiary hearing before this board. However, upon consideration of the stipulations of the parties, the board concluded that said stipulations failed to fully detail the conduct of the respondents. Accordingly, the board ordered the parties to appear and present evidence herein. The board conducted an evidentiary hearing on October 4, 1993, whereat respondents Robert R. Yurich and Dennis Yurich were the only witnesses who appeared and testified.

This matter is submitted for decision upon the complaint, answer, stipulations of fact, and the testimony and exhibits presented during the October 4, 1993 evidentiary hearing. The board also has the briefs that have been submitted on behalf of the parties.

Gov. Bar R. VII(2)(A) states: "The unauthorized practice of law is the rendering of legal services for others by anyone not registered under Rule VI or certified under Rule II, Rule IX, or Rule XI of the Rules for the Government of the Bar of Ohio." Respondents Dennis Yurich, Yurich and Associates, and Guardian Group have stipulated, and the record demonstrates, that they are not,

and never have been attorneys registered or certified to practice law in Ohio. Therefore, the central issue is whether any conduct of respondents Dennis Yurich, Yurich and Associates, and Guardian Group constitutes "the rendering of legal services for others" and, therefore, the unauthorized practice of law. For the reasons set forth below, we answer this question in the affirmative.

Robert R. Yurich has been licensed and authorized to practice law in the state of Ohio since 1964. However, between 1964 and 1990, Robert earned most of his income from various business ventures rather than as an attorney. In 1990, Robert was introduced to the subject of "living trusts" and concluded that the marketing and preparation of living trusts would be a lucrative business opportunity. Robert shared the idea with his younger brother, Dennis Yurich, not an attorney, who claims some computer expertise. To realize this new business opportunity, Robert formed Yurich and Associates, an Ohio for-profit corporation, for Dennis. Dennis was the sole officer, director, and shareholder of Yurich and Associates. Dennis hired, supervised, and paid all employees of Yurich and Associates. Robert was never a director, officer, or employer of Yurich and Associates. Even so, to avoid any confusion as to whether Robert had any ownership interest in Yurich and Associates, the name was later changed to Guardian Group. Hereinafter, Yurich and Associates and Guardian Group are sometimes referred to collectively as the "Yurich Corporations."

The Yurich Corporations provided financial planning services and various office administrative services, including computer programming services. In fact, Robert contracted with the Yurich Corporations for his accounting services, bookkeeping services, secretarial services, computer programing services, and document preparation services. However, the primary purpose of the Yurich Corporations was to market and sell living trusts. We review how the Yurich Corporations marketed and sold living trusts in the paragraphs below.

To generate living trust business for the Yurich Corporations, Dennis retained Robert to develop brochures (see Appendix A) touting the benefits and advantages of living trusts and inviting prospective customers to a *free seminar* to learn about estate planning and living trusts. As indicated in the brochures, Robert was the featured speaker at each seminar. The Yurich Corporations mailed these brochures to prospective living trust customers, mostly residing in Cuyahoga County, Ohio, and other parts of northern Ohio. The Yurich Corporations made all of the arrangements for the seminars.

At each seminar, Robert lectured on the benefits of living trusts and generally discussed estate planning and probate law. At the conclusion of each seminar, those in attendance were offered a one-hour *free consultation* with one of the

Yurich Corporations' representatives[2] to discuss their "suitability for a living trust." A person had to request the free consultation by completing the "Living Trust Seminar Evaluation" form (see Appendix C), which was prepared by Dennis and disseminated at the end of the seminar. If the consultation was held, the person requesting the consultation was required to sign a "Disclosure and Compliance" form (see Appendix D), which, among other things, states that the representative is not an attorney and that an attorney should be consulted for legal or tax advice.[3] If, after the free consultation, the person desired to have a living trust prepared, the representative advised him or her that the process involved two steps. The first step involved the Yurich Corporations' performance of what Robert and Dennis self-servingly termed "non-legal" services, which were described as being merely preparatory to the "legal" services which would be performed by the attorney. Further, the representative explained that the second step involved the preparation of the living trust and the performance of all other "legal" services in relation thereto.

The "non-legal" services that the Yurich Corporations performed for their living trust customers were numerous. Initially, the representative provided the customer with a blank "Confidential Personal–Financial Information Form" (see Appendix E). This form, hereinafter referred to as "CPF," was prepared by Robert to assist the Yurich Corporations in gathering needed information. The CPF is a comprehensive questionnaire which requires the customer to provide extensive personal and financial information. The form is very sophisticated and required the representatives to assist the customer in responding to the questions. Questions relate to, among other topics, the identification and disposition of assets, the execution of a power of attorney, the making of living will declarations, selection of guardians for minor children, and selection of executors for a pour-over will. Many of the terms used in the CPF are peculiar to the practice of law.

---

**2.** The Yurich Corporations employed several persons as representatives. These persons were mostly insurance agents, financial planners, and stockbrokers. One or two may have been attorneys. Each representative was required to sign a Representative Agreement (see Appendix B) with the Yurich Corporations. Pertinent here is that in paragraph "d" of the Representative Agreement, the representative agreed that he or she "shall not in any manner give or attempt to provide tax or legal advice to any prospect or client of the Company." Also, Dennis and Robert testified that they instructed the representatives to answer only financial questions. However, during the hearing before the board, Robert conceded that it was left up to the representatives to distinguish between financial questions and legal questions. Robert admitted that it was possible that the representatives may have answered legal questions.

**3.** Notwithstanding this disclaimer, the evidence before this board establishes that the representatives from time to time rendered legal and tax advice by answering certain questions asked by potential customers.

In addition to completing the CPF, the customer was required to provide the representative with all evidence of ownership in real and personal property, both tangible and intangible. For example, the customer was required to produce copies of any deeds, beneficiary statements for insurance, individual retirement accounts, retirement and annuity plans, and any other necessary documents that would be required for the funding portion of establishing a living trust.

The representative then conducted an interview with the customer wherein he reviewed the completed CPF and the various documents. During this interview, the customer was given an opportunity to ask the representative any questions that he or she had about the information requested in the CPF, estate planning, living trusts, and related matters. Although some of the customers' questions most certainly were legal in nature and required the expertise of an attorney, the representatives answered the questions and thereby rendered legal advice and opinions.

After the interview, the representative (rather than an attorney) determined if the person should have a living trust from an estate planning standpoint. This determination was reached after the representative made an estate asset analysis, including analyzing potential probate fees and federal estate tax consequences. The representative then explained to the customer why he or she should or should not have a living trust.

If the representative determined that the customer should have a living trust, it was the policy of the Yurich Corporations to recommend Robert to prepare the living trust and provide all related legal services. However, the customer was told that he or she could select any attorney. The board notes that ninety-five percent of Robert's living trust revenue was generated by referrals made by the Yurich Corporations. These referrals resulted in approximately $320,000 in revenues for Robert between 1990 and 1993.

If the customer selected Robert as his or her attorney, the Yurich Corporations recompiled the information contained on the CPF by inputing it to a computer. Through a computer program developed by Dennis, the computer generated various documents that were used by Robert in analyzing the customer's particular trust and estate needs. These computer-generated documents, the CPF, and all related documents were then given to Robert for his review. After he reviewed the documents, Robert would then arrange an appointment[4] with the customer to review problems or legal questions that Robert felt should be addressed prior to preparing the living trust. Thereafter, he returned the information to the Yurich Corporations, who again entered information into a

---

4. In all but a few cases, Robert either personally met with or talked to the customer. In some cases, Robert never met with the customer.

computer and generated the living trust document and related legal documents for Robert. Robert reviewed and approved the computer-generated documents prior to their delivery to any client. However, Robert admitted that many of the trust and other legal documents that the Yurich Corporations prepared for him were signed by the clients in the presence of representatives and witnessed by the representatives and not himself or any other attorney. Upon the signing of the trust and all other related documents, the person paid Robert for the preparation of the living trust and all its other related legal documents.

After the living trust was prepared and reviewed by Robert and signed by the person, the representative would, if needed, help the person transfer certain types of assets, such as stock certificates, into the trust and help the person change beneficiaries on insurance, annuities, and retirement plans. After he or she completes these functions, the representative is paid a commission which is a percentage of the fee charged by the Yurich Corporations. The board finds that the Yurich Corporations charged fees of $500 per couple and $350 per person for their "non-legal" services performed in relation to the preparation of living trusts. On average, the Yurich Corporations generated revenues of $1,000 to $8,000 a month.

The Yurich Corporations ceased doing business sometime prior to October 4, 1993, the date of the evidentiary hearing before the board in this matter. Currently, Dennis works as a paralegal for Robert. Dennis no longer employs any outside representatives in connection with the preparation of living trusts.

The Supreme Court of Ohio set forth the clearest definition of what constitutes the "unauthorized practice of law" in the case of *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650. In the first paragraph of its syllabus, the court held:

"The practice of law is not limited to the conduct of cases in court. *It embraces the preparation of pleadings and other papers* incident to actions and special proceedings and the management of such actions and proceedings *on behalf of clients* before judges and courts, *and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law.*" (Emphasis added.)

In *McMillen v. McCahan* (C.P.1960), 83 Ohio Law Abs. 1, 11, 14 O.O.2d 221, 229, 167 N.E.2d 541, 550, the court described three activities generally included in the practice of law:

"It is clear that a licensed attorney in the practice of law generally engages in three principal types of professional activity. These types are legal advice and instructions to clients to inform them of their rights and obligations; preparation for clients of documents and papers requiring knowledge of legal principles which

is not possessed by an ordinary layman; and appearance for clients before public tribunals, which possess the power and authority to determine rights of life, liberty and property according to law, in order to assist in the proper interpretation and enforcement of law."

Paragraph one of the syllabus of *Green v. Huntington Natl. Bank of Columbus* (1965), 4 Ohio St.2d 78, 33 O.O.2d 442, 212 N.E.2d 585, reads:

"A bank or trust company which provides specific legal information in relation to the specific facts of a particular person's estate for the purpose of obtaining a more beneficial estate condition in relation to tax and other legal consequences of death is giving legal advice."

In *Ohio State Bar Assn. v. Berning* (1982), Shelby C.P. No. 81–CV–346, unreported, the court found that the following activity by a non-lawyer constituted the unauthorized practice of law:

"(a) advising and counseling residents of Ohio with respect to the laws of Ohio governing the probate of decedents' estates and the tax laws of Ohio and the United States;

"(b) advising and counseling residents of Ohio that a specific type of trust agreement would be suitable for their respective estates and should be established; and

"(c) preparing and drafting trust agreements, deeds to real property for residents of Ohio, and the supervision of the execution of those documents in Ohio to carry into effect the advice and counsel given, as aforesaid."

In *Ohio State Bar Assn. v. Martin* (1994), 66 Ohio Misc.2d 15, 642 N.E.2d 75, the board followed the court's holding in *Berning, supra.* The board held that a living trust is a legal instrument or document which significantly affects the legal rights of an individual concerning the taxability, control, and disposition of his or her assets. Accordingly, we further held that where a non-attorney prepares a living trust for another and provides advice relative to their legal rights and responsibilities in trust and tax matters, he or she is engaging in the unauthorized practice of law. However, the board held that the mere gathering of information to be used to prepare trusts and other legal documents does not necessarily constitute the practice of law.

We find that the foregoing cases are controlling and dispositive in this matter. The uncontroverted evidence before this board establishes that Dennis and the Yurich Corporations did more than merely gather information to be used by Robert in preparing living trusts and other legal documents as respondents argue in their briefs. The board finds that the representatives not only gathered information but also provided advice to living trust customers relative to their individual legal rights and responsibilities in trust, estate, and tax matters.

These representatives answered customers' legal questions about living trusts, estate planning, and tax matters. This advice was unlawful, although the representatives informed the customer to consult an attorney. Most important, the representative rather than an attorney determined whether the customer should have a living trust. Further, Dennis and the Yurich Corporations participated in the preparation of living trust documents and other legal documents for others, for a fee.

After careful consideration of the pleadings, stipulations, exhibits, the arguments of counsel, pre-hearing and post-hearing briefs, and the applicable law, it is the conclusion of this board that relator has proven certain allegations of the complaint to the extent required by Gov.Bar R. VII, that respondents Dennis Yurich, Yurich and Associates, and Guardian Group engaged in the unauthorized practice of law, and that relator should be authorized to proceed pursuant to Gov.Bar R. VII(8).

The board therefore authorizes relator to commence an action in a court of competent jurisdiction for the purpose of obtaining a judicial determination whether respondents Dennis Yurich, Yurich and Associates, and Guardian Group engaged in the unauthorized practice of law and for the appropriate injunctive relief permanently enjoining respondents from doing so.

Pursuant to Gov.Bar R. VII(9), and to the extent authorized, relator may seek reimbursement from the board for expenses and attorney fees incurred in the further prosecution of this matter.

In its complaint, relator also alleges that respondent Robert R. Yurich aided and abetted the other respondents in engaging in the unauthorized practice of law. Relator also seeks to enjoin Robert R. Yurich from engaging in such conduct in the future. Gov.Bar R. VII(2)(B) provides: "The Board of Commissioners is empowered and charged to receive, entertain, inquire into, take evidence, make findings and submit recommendations concerning complaints of unauthorized practice of law." Inasmuch as Robert R. Yurich is an attorney at law licensed and authorized to practice law in the state of Ohio, the board finds that it is without jurisdiction to grant the relief requested by relator.

A copy of this opinion shall be served upon relator, respondents, all counsel of record, Disciplinary Counsel, the Cuyahoga County Bar Association, and the Ohio State Bar Association.

*So ordered.*

**32**

## APPENDICES

APPENDIX A        Brochures from Yurich and Associates and Guardian Group

APPENDIX B        Representative Agreement

APPENDIX C        Living Trust Seminar Evaluation

APPENDIX D        Disclosure and Compliance Form

APPENDIX E        Confidential Personal–Financial Information Form

# WHOSE ESTATE GOES THROUGH PROBATE?

In Ohio, if you own personal assets of $25,000 or more, your estate must go through probate.

# PROBATE. IT GOES AGAINST YOUR WILL.

But It Can't Go Against Your LIVING TRUST.

34

## A Will Won't:

- Avoid probate.

- Avoid probate costs.

- Protect your privacy.

- Give your loved ones full control of your estate.

- Respond if you become incapacitated.

- Save you from exorbitant taxation.

## A Living Trust Will.

## YURICH

A S S O C I A T E S

6674 Pearl Road
Cleveland, Ohio 44130-3820
(216)884-8881

# Why Living Trusts Are Infinitely Superior To Wills.

## WILL (probate)

If you are incapacitated, probate court appoints a guardian who reports to the court. The court controls your finances and assets. You pay all court costs and, attorney fees.

At death, probate court orders your assets distributed per your will. Your heirs pay all court costs and attorney fees, usually 6%-15% of your gross estate.

Estates in excess of $600,000 are subject to major Federal Estate Taxation, often 1/3 of your estate.

Probate orders that your debts be paid immediately, in full. Many times this causes the forced sale of assets.

Your possessions are distributed after possible long probate delays, often 1-3 years.

You can change your will at any time, but it can be contested.

Your family has no privacy. Probate files are open to the public, so anyone can see what you owned and to whom you owed.

In the case of a minor child, probate takes control of the child's inheritance.

## LIVING TRUST (no probate)

If incapacitated, your appointed trustee controls your finances and assets according to your instructions. No court costs or attorney fees to pay.

At death, there is no probate, no probate costs. Your successor trustee distributes your estate to your heirs according to your desires.

A married couple with an estate over $600,000 could save up to $235,000 in federal estate taxes legally.

Debts are transferred to survivors and paid in increments over time, just as if nothing had changed.

Possessions are immediately distributed, usually 4-6 weeks.

You can change your Living Trust at any time ... even discontinue it. A Living Trust is very hard to contest.

Enjoy complete privacy. Living Trusts are not public record, so unscrupulous persons cannot gain information.

Your appointed trustee manages the child's inheritance according to your wishes.

# The Choice Is Yours
## Sacrifice A Large Portion Of Your Life Earnings To:

Attorneys, court costs, executors, appraisors, federal taxation, or leave everything possible to your loved ones.

If It Makes Total Sense,
# Why Don't More People Use A Living Trust?

Living Trusts have existed for several hundred years, but many lawyers are not familiar with the procedure. And why should they be? They stand to lose all the large legal fees involved with probate.

# Protect Your Estate And Your Family...With Knowledge!

It never hurts to ask. And asking for more information on Living Trusts takes just 60 seconds. Simply fill out the enclosed reply card, affix a stamp, and mail. Or call (216) 884-8881. Yurich Associates will send you, FREE, The Living Trust Information Package, complete with published articles from noted newspapers and journals.

This brochure is solely for your information. It has been prepared for Yurich Associates by Robert R. Yurich, a registered Ohio attorney since 1964, specializing in Living Trusts.
This brochure is printed on Environment.® A paper for the environmentally concerned. 100% RECYCLED PAPER.

# PROBATE. IT GOES AGAINST YOUR WILL.

But It Can't Go Against Your LIVING TRUST.

# WHOSE ESTATE GOES THROUGH PROBATE?

In Ohio, if you own personal assets of $25,000 or more, your estate must go through probate.

**Guardian Group**

6674 Pearl Road
Cleveland; Ohio 44130-3820
(216)884-8881

BULK RATE
U.S. Postage
**PAID**
Permit No.
2472
Cleveland, Ohio

R#_____

**DATED MATERIAL**
Please Deliver Promptly

# Why Living Trusts Are Infinitely Superior To Wills.

## WILL (probate)

If you are incapacitated, probate court appoints a guardian who reports to the court. The court controls your finances and assets. You pay all court costs and attorney fees.

At death, probate court orders your assets distributed per your will. Your heirs pay all court costs and attorney fees, usually 6%-15% of your gross estate.

Estates in excess of $600,000 are subject to major Federal Estate Taxation, often 1/3 of your estate.

Probate orders that your debts be paid immediately, in full. Many times this causes the forced sale of assets.

Your possessions are distributed after possible long probate delays, often 1-3 years.

You can change your will at any time, but it can be contested.

Your family has no privacy. Probate files are open to the public, so anyone can see what you owned and to whom you owed.

In the case of a minor child, probate takes control of the child's inheritance.

## LIVING TRUST (no probate)

If incapacitated, your appointed trustee controls your finances and assets according to your instructions. No court costs or attorney fees to pay.

At death, there is no probate, no probate costs. Your successor trustee distributes your estate to your heirs according to your desires.

A married couple with an estate over $600,000 could save up to $235,000 in federal estate taxes legally.

Debts are transferred to survivors and paid in increments over time, just as if nothing had changed.

Possessions are immediately distributed, usually 4-6 weeks.

You can change your Living Trust at any time ... even discontinue it. A Living Trust is very hard to contest.

Enjoy complete privacy. Living Trusts are not public record, so unscrupulous persons cannot gain information.

Your appointed trustee manages the child's inheritance according to your wishes.

# Living Trust Seminar

Wednesday,
November 11, 2pm or 7pm
Holiday Inn, I-77 & Rockside
with guest
Robert Yurich
Attorney at Law since 1964.

This seminar, which includes an information package, is FREE, however all seats must be reserved for seating is limited. Call 884-8881 today to reserve your seat.

This brochure is solely for your information. It has been prepared for Guardian Group, by Robert Yurich, a registered Ohio Attorney since 1964. This brochure is printed with soy ink on Evergreen, a paper for the environmentally concerned.

## APPENDIX B

## EXHIBIT "D"

### REPRESENTATIVE AGREEMENT

This agreement between Guardian Group, Inc., hereinafter referred to as the "Company", the Representative undersigned, hereinafter referred to as "you", and the Manager, hereinafter referred to as the "Manager", do hereby agree to the following conditions:

a) You shall act in all instances as an independent contractor, establishing your own hours and providing your own office facilities;

b) You shall pay all your operating expenses;

c) You are to pay all occupational taxes and federal, state and municipal taxes;

d) You shall not in any manner give or attempt to provide tax or legal advice to any prospect or client of the Company;

e) You shall not make, modify or destroy any Will or Trust agreements;

f) You are responsible for your actions and persons in your employ. You agree to indemnify and hold the Company harmless from any loss, costs, liabilities, or damages which are incurred by the Company as a result of your acts or omissions or the acts or omissions of your employees, including the violation of any law, regulation, or provision of this contract;

g) You shall not incur any liability for the Company, and shall defend yourself for any wrongful act or failure to act by yourself;

h) You shall treat all documents, sales materials, customer lists provided by the Company to be proprietary materials belonging to the Company;

i) All advertising material of any kind, including form letters (duplicated by any means as well as individually typewritten form letters), telephone listings, or signs, used by you which use or include the name Guardian Group or which describes services or products provided by the Company shall be submitted to the Company and shall not be printed, circulated, or used without the Company's prior written approval;

j) You are not authorized to use the Company's stationery for any purpose;

k) This agreement may be terminated without cause by either party upon written notice to the other party. Upon termination you shall repay all indebtedness due to the Company, including monies advanced to you. You shall upon termination of this agreement return all documents and materials, excepting any materials that have been purchased by you from the Company;

l) You shall charge only those published charges of the Company and shall remit all collections to the Company as soon as practicable;

m) You shall receive all compensation from the Company;

n) The manager and the Company shall provide from time to time sales aids as determined by business conditions;

o) The Company may refuse to accept, at its option, any business submitted by you;

p) This contract shall not be modified except in writing signed by you and the President or Vice President and Secretary of the Company;

q) The forbearance or neglect of the Company to require a strict compliance on your part with any of the terms and conditions of this contract, or to declare a default for failure to perform when it shall become known to the Company, shall not operate as a waiver of any of theses terms of conditions or as a release of you from your obligations thereafter to perform this contract strictly in accordance with its terms and conditions;

r) This contract may not be assigned by you without the prior written consent of the Company. The Company may assign this contract without your consent to any corporate successor-in-interest, successor-in-merger, or successor-in-consolidation;

s) Any notice required by the terms of this contract shall be in writing and will be deemed given when it is deposited in the United States mail, postage prepaid, properly addressed to you at your last known mailing address or to the Company at its home office in Parma Heights, Ohio;

t) Any controversy or claim arising out of, or relating to this contract, or any breach thereof, shall be settled in accordance with the rules of the American Arbitration Association. A judgement upon the Arbitrator's award may be entered in any court having jurisdiction thereof.

| Representative | Date | Manager | Date | Guardian Group, Inc. | Date |
| --- | --- | --- | --- | --- | --- |

| Representative (Print) | | Manager (Print) |
| --- | --- | --- |

CONFIDENTIAL REPRESENTATIVE INFORMATION

Last Name _____ First Name _____ M.I._____ Birthdate _____ Age _____ Sex _____

Home Phone (_____) _____ Work Phone (____) _____ ext:_____ Soc. Sec. / _____

Home Address _____ City _____ State _____ Zip _____

Work Address _____ City _____ State _____ Zip _____

P.O. Box _____ City _____ State _____ Zip _____

Years at Residence _____ Married (Y/N) _____ Spouse Name _____ No. of Dependents _____

Former Residence if current less than 2 years_____ City _____ State _____ Zip _____

Education: High School (Y/N) _____ College (Y/N) _____ No. of Years _____ College Names _____

Employment History For The Last 5 Years (list most current first):

Company _____ Position _____ Address _____ Dates From _____ To _____

Company _____ Position _____ Address _____ Dates From _____ To _____

Company _____ Position _____ Address _____ Dates From _____ To _____

Company _____ Position _____ Address _____ Dates From _____ To _____

Are you insurance licensed? (Y/N) _____ Are you securities licensed (Y/N)? _____ License Series? _____

Insurance Companies Represented In Last 5 Years Including Present Companies:

Company _____ Phone _____ Address _____ Dates From _____ To _____

Company _____ Phone _____ Address _____ Dates From _____ To _____

Company _____ Phone _____ Address _____ Dates From _____ To _____

How was contact made with Guardian Group, Inc.? _____ Response to Direct Mail _____ Personal Contact with Company Representative _____

Other

Have you ever had your insurance or securities license suspended or revoked (Y/N)? _____

Have you ever been refused bond by a surety company (Y/N)? _____

Have you or anyone employed by you ever been convicted of a felony or a misdemeanor which arose out of the conduct of your business practices (Y/N)?____

Are you or anyone employed by you involved in any litigation that has any connection with the filing of this application or the conduct of your business practices (Y/N)? _____

Representative Declaration and Authorization

A. I hereby certify that my answers to the above questions are true. I agree that as your Representative, I shall be fully responsible for all monies collected by me. My failure to do so will immediately terminate my association with you.

B. I hereby give permission to Guardian Group, Inc. or its duly authorized representative to contact or to release any information to any organization or individual who has knowledge of my past or present employment or financial status.

C. I authorize the individuals or companies shown in my application to give any information regarding my employment together with any information they have whether or not in their records and release said individuals or companies from all liabilities for any damage whatsoever for issuing this information.

D. Public Law 91-508 requires that we advise you that a routine inquiry may be made during our initial or subsequent processing which will provide applicable information concerning character, general reputation, personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the inquiry, if one is made, will be provided.

E. A photocopy of this authorization shall be as valid as the original.

Signature of Applicant _____ Date _____

APPENDIX C

# Living Trust Seminar Evaluation

Please help us to improve the seminar by completing this evaluation.

• How was the length of the seminar? ___ too short ___ OK ___ too long

• Could you hear at all times? ___ yes ___ no

• Was the facility comfortable? ___ yes ___ no

• Did the visuals on the screen help you? ___ yes ___ no

• Were all the topics you expected covered? ___ yes ___ most ___ few

• Do you feel you have benefitted from coming today? ___ yes ___ no

• How did you find out about the seminar? ___ newspaper ___ phone ___ mail ___ radio ___ TV ___ friend ___ other_____

• Would you recommend the seminar to a friend? ___ yes ___ no Friend's name _____ Phone _____

• If you could change something about the seminar what would it be? _____

• Comments _____

• Would you like a one hour free consultation about your suitability for for a Living Trust? ___ yes ___ no, if yes please complete:

Name: _____ Phone: _____

Address: _____

• Thank you for completing this evaluation and attending our seminar.

APPENDIX D .

# DISCLOSURE AND COMPLIANCE

**I UNDERSTAND THAT MY REPRESENTATIVE IS NOT AN ATTORNEY OR CERTIFIED TAX AUTHORITY AND THAT I SHOULD CONSULT AN ATTORNEY AND/OR TAX ACCOUNTANT FOR LEGAL OR TAX ADVICE.**

I understand that my representative is accumulating information in order to analyze the current value of my estate and I understand that this information will be compiled and then used by me to determine if I should consider consulting an attorney for the purpose of preparing a Living Trust for me.

I understand that I will take responsibility for consulting an attorney to prepare any legal documents required to transfer assets into my Living Trust, except that I may request my representative to prepare' non-legal letters such as change of beneficiaries notifications.

I understand that the Living Trust will be prepared based on facts that I have given the representative. This information is complete with respect to assets listed and desires I have of my estate. Any omission cannot result in liability to the Guardian Group, Inc., Robert Yurich or the representative.

I understand that should I acquire a Living Trust, it is my/our sole responsibility to transfer whatever assets I wish into the trust and that there may be recording and other fees required in funding a trust.

I understand that I will pay one fee to the Guardian Group, Inc. for the preparation of financial data service and a separate fee to Robert Yurich, Attorney-At-Law, in the event that Robert Yurich is my choice for legal consul. I understand the fee paid to the Guardian Group, Inc. is not for any legal services.

I understand that if I happen to change my mind, I have three days from the date of the receipt in which I can notify the Guardian Group, Inc. and I will be entitled to receive a full refund.

I have read and fully understand all of the above.

**DO NOT SIGN BEFORE READING THE ABOVE STATEMENTS**

_____     _____     _____     _____
Client Signature                    Date              Spouse Signature                    Date

_____     _____
Client Printed Name              Spouse Printed Name

APPENDIX E

# Confidential Personal Financial Information  Date_____ T-Num_____

General Information

**You**

| | | |
|---|---|---|
| Last Name: | First: | Middle Initial: |
| Address: | ☐City ☐Village ☐Township: | State: |
| Home Phone: | County: | Zip: | ☐Married ☐Single ☐Widowed ☐Divorced |
| Age: Date of Birth: | Social Security #: | Annual Income: |
| Legal address if different from mailing address: | ☐City ☐Village ☐Township: | |

**Your Spouse**

| | | |
|---|---|---|
| Last Name: | First: | Middle Initial: |
| Age: Date of Birth: | Social Security #: | Annual Income: |

**Circle Yes or No for each question.**

Yes No   Do you have a will and/or a trust now?   Which? _____

Yes No   Are you expecting to receive property or money from (circle one):
            Inheritance      Gift      Judgement/Lawsuit      Other
            If yes, what is the approximate value? _____

Yes No   Do you have any living children? How Many? _____

Yes No   Are all your children legally yours, either natural or legally adopted?

Yes No   Are there any stepchildren in your family? How many? _____

Yes No   Do you have any children under 18? How many? _____

Yes No   Do you have any grandchildren? How many? _____

Yes No   Do you have any living brothers or sisters? _____ Brothers _____ Sisters

Yes No   Does your spouse have any living brothers or sisters? _____ Brothers _____ Sisters

Beneficiaries

| Special Gifts - Organizations and Individuals | Do you want to make a gift to a charity, foundation, religious organization, or give any specific items to a family member or other individual? | |
|---|---|---|
| Name of Organization or Individual | Address | Description of Gift |
| | | |
| | | |
| | | |

| Your Beneficiaries | Who do you want to receive the rest of your estate after the special gifts have been distributed? You can designate a dollar amount, a fraction, or a percentage. | | |
|---|---|---|---|
| Name & Address of Person | Relationship | Age | Dollar Amount or Percentage |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Important:** Your Living Trust will be written so that if any above beneficiary dies before you, his or her share will be divided equally between their children. If you want a different designation, attach a separate note stating wishes.

I understand that my Living Trust will be prepared based on the facts I have supplied on this form. This information is complete with respect to the assets listed and the desires I have for my estate. Any omissons can not result in liability to preparing attorney.

X _____        X _____

45

## Successor Trustees

Who do you want to handle your personal and financial estate if you or your spouse can not?
It is highly recommended to list at lease two Successor Trustees.

| | |
|---|---|
| First Successor Trustee: | Relationship: |
| Address: | Phone: |
| Second Successor Trustee: | Relationship: |
| Address: | Phone: |
| Third Successor Trustee: | Relationship: |
| Address: | Phone: |

## Executors

Who do you want to be the Executor of your Pour Over Will? For married couples, the Will is written so that the spouses will be Executors for each other. Please list two other alternate Executors. ☐ Make same as Trustees.

| | |
|---|---|
| Executor: | Relationship: |
| Address: | Phone: |
| Next Executor: | Relationship: |
| Address: | Phone: |

## Power Of Attorney

Who do you want to have Power of Attorney for you? For married couples, the Power of Attorney is written so that the spouses will be Power of Attorney for each other. ☐ Make same as Trustees.
Please list two other alternate Power of Attorneys.

| | |
|---|---|
| Power of Attorney: | Relationship: |
| Address: | Phone: |
| Next Power of Attorney: | Relationship: |
| Address: | Phone: |

## Power Of Attorney For Health Care

Who do you want to make health care decisions for you? For married couples, each will have health care powers for each other. Please list alternates Power of Attorney for Health Care. ☐ Make same as Trustees.

| | |
|---|---|
| Power of Attorney for Health Care: | Relationship: |
| Address: | Phone: |
| Next POA for Health Care: | Relationship: |
| Address: | Phone: |

## Living Will Declaration

☐ Check here if you desire a Living Will, so not to allow your life to be artificially prolonged.

IMPORTANT: The Trust is written so that all beneficiaries age 25 and older will receive their inheritance immediately. Those beneficiaries under age 25 will have their inheritance held in the Trust until age 25 is reached, then full distribution will be made. If you have a different desire, please note it on the next page.

## Guardians For My Minor Children

| | |
|---|---|
| Who do you want to raise your children? | |
| First Guardian: | |
| Address: | |
| Second Guardian: | |
| Address: | |

## Special Notes

Use this section to notate any special . ,uests, desires or questions you may have.

## Financial Information

### Home and Other Real Estate

Estimate Future Appreciation (4%)

| Property (address) | Titled in whose name | Mrkt Value | Mortgage | Equity |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | Total Net Value | 1 | |

### Other Titled Property (cars, boats, etc)

Estimated Future Appreciation (0%)

| Property Description | Titled in whose name | Mrkt Value | Loan | Equity |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | Total Net Value | 2 | |

### Life Insurance Policies

Total Death Benefit Value: 3

| Name of Company | Policy Number | Owner | Beneficiary | Cash Value | Death Benefit |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### Checking Accounts, Savings Acounts & CD's

Estimate Rate of Return (6%)

| Name of Bank | Account Number | Titled in whose name | Approx Bal |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Total Value | 4 |

## Financial Information

### Stocks (S) Bonds (B), Mutual Funds (M), Annuities (A), and Tax Free (T) Investments

| Type | Shares | Name of Security | Account Number | Titled in Whose Name | Value |
|------|--------|------------------|----------------|----------------------|-------|
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |                      |       |
|      |        |                  |                |          Total Value |       |

### IRA's (I), Keoghs (K), and Company Pensions (CP)

| Type | Location | Account Number | Titled in Whose Name | Value |
|------|----------|----------------|----------------------|-------|
|      |          |                |                      |       |
|      |          |                |                      |       |
|      |          |                |                      |       |
|      |          |                |          Total Value |       |

### Misc. Items of Value and Personal Property (coins, jewelry, heirlooms, etc. & clothes, furniture etc.)

| Description | Location | Value |
|-------------|----------|-------|
|             |          |       |
|             |          |       |
|             |          |       |
|             |          |       |
|             | Total Value |    |
|             | Total Value |    |

How did you find out about Living Trusts?
_____ Mail _____ Radio _____ TV _____ Friend _____ Article I Read _____ Other
Have you been to a Living Trust Seminar? _____ Yes _____ No   If yes, when? _____
      Where? _____ Who was the speaker(s)? _____
What is the first most important reason for doing your Living Trust? _____ Reduce Estate Taxes _____ Avoid Probate Costs
      _____ Avoid Probate Problems _____ Organize my Estate distribution _____ Make things easier for my heirs
What is the second most important reason for doing your Living Trust? _____ Reduce Estate Taxes _____ Avoid Probate Costs
      _____ Avoid Probate Problems _____ Organize my Estate distribution _____ Make things easier for my heirs
Would you recommend a Living Trust to a friend or relative? _____ Yes _____ No
      If yes, Name _____ Phone _____.