48

MAHONING COUNTY BAR ASSOCIATION

v.

THE SENIOR SERVICES GROUP, INC.

Board of Commissioners on the
Unauthorized Practice of Law.

No. UPL–93–4.

Decided Sept. 23, 1994.

*Louis E. Katz,* for relator.

*Reminger & Reminger Co., L.P.A.,* and *Lawrence A. Sutter,* for respondent.

---

JOHN W. WADDY, JR., Chairman.

Pursuant to Gov.Bar R. VII(7), a formal hearing was held in this matter on March 23, 1994 in Columbus, Ohio. Members of the Board of Commissioners on the Unauthorized Practice of Law participating in the hearing and decision were John W. Waddy, Jr., Chairman, Jack R. Baker, Craig D. Barclay, John J. Carney, Paul D. Frankel, and D. John Travis.

Appearing on behalf of relator was Louis E. Katz, Poland, Ohio, and on behalf of respondent was Lawrence A. Sutter, Reminger & Reminger Co., L.P.A., Cleveland, Ohio.

 The complaint of relator Mahoning County Bar Association alleges, *inter alia,* that respondent The Senior Services Group, Inc. has engaged in the unauthorized practice of law by furnishing legal advice and transacting various activities, including the conducting of seminars on estate planning, trusts, probate matters, and tax considerations, together with the preparation of trusts, powers of attorney, and deeds. The complaint further alleges that the actions of The Senior Services Group, Inc., which is not an attorney or a legal professional association, amount to the furnishing of legal advice and the unauthorized practice of law by:

"a. advising and counseling various persons with respect to the laws of Ohio governing wills, descent and distribution, estates, and probate matters;

"b. advising and counseling various persons regarding the nature, effect, and implications of the Ohio and Federal estate taxes;

"c. advising and counseling various persons that a specific type of trust would be suitable for their needs and should be established; and

"d. preparing and drafting trust and other instruments for various persons and in assisting in the execution of these documents into legal effect in furtherance of the advice and counsel rendered."

The answer of respondent admitted that The Senior Services Group, Inc. is neither an attorney at law nor a legal professional association. Respondent further admitted that it has on prior occasions conducted seminars on "various estate planning devices" but denied that the seminars and its activities constituted the furnishing of legal advice or the unauthorized practice of law. Various motions and discovery orders having been issued and ruled upon during the pendency of this matter, formal hearing before the board proceeded upon reasonable notice, with a transcript of the hearing being prepared pursuant to Gov.Bar R. VII(7).

Testimony of witnesses called by relator, and evidence presented by exhibits, revealed that respondent was incorporated for the purpose of marketing living trusts and investment products. In 1993, it disseminated and mailed a document entitled "Private Invitation" for a "free one hour lecture" and "free seminar" on the subject of revocable living trusts. This brochure identified James A. Mosteller, Jr. as a "nationally known lecturer" who would present the seminar and information on the benefits of a living trust. The brochure further described living trusts as the "fail proof way to pass along your estate to your heirs and loved ones without the courts, or probate system," and stated that living trusts avoided publicly probated wills, eliminated capital gains from estates, avoided will contest actions, and permitted the retention of full asset control while at the same time being revocable. The recommendation was that "everyone" with an estate over $50,000 should have a living trust. The brochure showed a return address of respondent, at 55 South Miller Road, Suite 203, Akron, Ohio.

A witness called on behalf of relator attended the free seminar/lecture on May 5, 1993 in Youngstown, Ohio. The audience was described as generally elderly and the speaker was introduced as an employee of respondent who, while not an attorney, was an expert on matters involving living trusts. A one-hour presentation ensued, with a number of individual questions and answers occurring after the formal presentation. The speaker provided advice to relator's witness on specific issues involving transfers of assets by deed and payable-on-death accounts. In addition, attendees at the seminar/lecture were provided with documents representing that The Senior Services Group, Inc. was founded by James A. Mosteller, Jr., with the head of its "living trust operations" being an attorney who was "nationally prominent" and who was also vice president of respondent. The literature further described features of the living trust, which would be prepared by respondent, as including numerous documents, such as abstract of trust, final instructions, living will, and powers of attorney, among others.

The written outline used by the speaker at the seminar/lecture, submitted by counsel for respondent, covered a variety of diverse topics, such as history of living trusts, information regarding wills, probate costs and expenses, testamentary trusts, benefits of living trusts, estate and probate information, and taxation matters.

The president of respondent, James A. Mosteller, Jr., testified that The Senior Services Group, Inc. conducted approximately forty seminars in the year 1993, and identified the May 5, 1993 seminar in Youngstown as being conducted by a nonattorney. Mosteller, also not an attorney, made presentations at various seminars for respondent and answered questions of participants regarding living trusts, and on occasion provided to attendees general information on state and federal taxes and guardianships. These seminars also involved the providing of information as to (1) how the use of revocable living trusts could avoid probate, (2) direct transfer of assets to beneficiaries after death, and (3) how to eliminate expenses such as court costs.

Information obtained at the seminars, including identity of attendees, would be used in having an "independent representative" of respondent make personal calls at the homes of prospective clients. The particular "independent representative" referred to at the hearing, also not an attorney, acted as an agent for respondent, was licensed to sell annuities and life insurance, and was compensated by respondent based upon revenue generated. In May 1993, respondent employed approximately six "independent representatives," who provided similar information to prospective clients as was provided at the seminars. They also answered questions of prospective clients of respondent and gave advice on the legal effects and ramifications of living trusts.

Andrew P. Bodnar of Akron, an attorney identified by respondent as a member of the corporation and involved in its trust operations, also testified. While serving as an incorporator of respondent, he denied present knowledge as having served as an officer of respondent, but agreed that he may have so served and that he may have resigned the position. He also denied ever being involved in the marketing of living trusts and denied any knowledge that brochures exactly like those mailed under the auspices of The Senior Services Group, Inc. were also being mailed with his name and the same address, indicating that he was the sponsor of that particular lecture series. The format of the brochure using Bodnar's name was exactly the same as the brochure using the name of The Senior Services Group, Inc.

According to testimony by Bodnar, information obtained from the "independent representative" and documents filled out by the prospective clients would be submitted and he would then meet with the prospective clients. Either he or another attorney in his office would prepare the various required documents and

record any deeds necessary to effectuate the living trust. Payments for his legal services were initially made to him by respondent, but he testified that this practice changed in approximately May 1993 and the individual "clients" would thereafter pay him personally.

■ This board has no jurisdiction and declines to comment upon the propriety of the relationships and arrangements between respondent and Bodnar, although respondent claims to have discontinued the practice of marketing living trusts and to presently limit its activities to financial planning for life insurance and annuities, together with sales of securities, stocks, bonds, and similarly related matters.

■ The issue before this board is whether respondent has been shown by a preponderance of the evidence to have engaged in the unauthorized practice of law by virtue of the allegations in the complaint. We answer in the affirmative, initially noting that jurisdiction is granted to this board to determine whether the unauthorized practice of law has occurred through the rendering of legal services for others by anyone not licensed or registered to practice law in Ohio. Gov.Bar R. VII(2). Further, the advising of others on their legal rights and responsibilities is generally considered to be the practice of law. *Mahoning Cty. Bar Assn. v. Rector* (1992), 62 Ohio Misc.2d 564, 608 N.E.2d 866. The practice of law certainly encompasses many areas, but it has been held that in general there are three principal types of activity that constitute legal practice: (1) legal advice and instructions to clients advising them of their rights and obligations; (2) preparation of documents for clients, which requires legal knowledge not possessed by an ordinary layman; and (3) appearing for clients in public tribunals and assisting in the interpretation and enforcement of law, where such tribunals have the power and authority to determine rights of life, liberty, and property according to law. *McMillen v. McCahan* (C.P.1960), 83 Ohio Law Abs. 1, 11, 14 O.O.2d 221, 229, 167 N.E.2d 541, 550. And, it has generally been recognized that the most succinct and clear definition of the "unauthorized practice of law" is set forth in the syllabus of *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650:

"The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all actions taken for them in matters connected with the law."

Ohio courts have also found the activities of respondent, established by the evidence, to constitute the unauthorized practice of law. In *Ohio State Bar Assn.*

*v. Berning* (Sept. 1, 1982), Shelby C.P. No. 81–CV–346, unreported, it was held that the unauthorized practice of law is established where a nonlawyer performs the following activities:

"a. Advising and counseling residents of Ohio with respect to the laws of Ohio governing the probate of decedents' estates and the tax laws of Ohio and the United States;

"b. Advising and counseling residents of Ohio that a specific type of trust agreement would be suitable for their specific estates and should be established; and

"c. The preparation and drafting of trust agreements, and deeds to real property for residents of Ohio, and the supervision of the execution of those documents in Ohio to carry into effect the advice and counsel given, as aforesaid."

Other states have similarly restricted activities of nonlawyers, including holding that the unauthorized practice of law encompasses the giving of advice, counseling, and sale of living trusts by nonlawyers. *People v. Volk* (Colo.1991), 805 P.2d 1116. In an opinion arising from disciplinary proceedings in Iowa, *Commt. on Professional Ethics & Conduct of the Iowa State Bar Assn. v. Baker* (Iowa 1992), 492 N.W.2d 695, headnote 3 states:

"Living trust marketer who advised clients about what they needed in way of estate planning, including what documents they would need and how those documents would need to be tailored to meet their particular situation, was 'practicing law[.]' "

Similar practices as those in the instant matter were found to constitute the practice of law by the Supreme Court of Florida. While finding that the "practice of law" included the assembling, drafting, execution, and funding of living trusts, it was also held that the "practice of law" includes the "determination of need for living trust and identifying type of living trust most appropriate for client." *Florida Bar Re Advisory Opinion—Nonlawyer Preparation of Living Trusts* (Fla.1992), 613 So.2d 426, headnote 1. Particularly germane to the testimony and evidence before this board, and descriptive of the concerns and relationships of the parties, is the following concise statement:

"The question posed by petitioner also presents a potential conflict of interest for a lawyer employed by a corporation or other entity involved in the sale of living trusts. Loyalty is an essential element in the lawyer's relationship to a client. In advising a client about the disposition of property after death, the lawyer must first determine whether a living trust is appropriate for that client. If so, the lawyer must then ensure that the living trust meets the client's needs. If the lawyer is employed by the corporation selling the living trust rather than

by the client, then the lawyer's duty of loyalty to the client could be compromised." *Florida Bar Re Advisory Opinion, supra,* at 428.

Upon thorough review of the pleadings and evidence in this matter, and pursuant to Gov.Bar R. VII(8)(B), the board finds by a preponderance of the evidence that respondent, The Senior Services Group, Inc., has engaged in the unauthorized practice of law as charged and set forth in the complaint of relator filed July 7, 1993.

This conclusion is in accord with the board's recent decisions in two other cases relative to the preparation and sale of living trusts. *Ohio State Bar Assn. v. Martin* (1994), 66 Ohio Misc.2d 15, 642 N.E.2d 75, and *Cleveland Bar Assn. v. Yurich* (1994), 66 Ohio Misc.2d 22, 642 N.E.2d 79.

The board therefore authorizes relator to commence an action in a court of competent jurisdiction for the purpose of obtaining a judicial determination whether respondent The Senior Services Group, Inc. has engaged in the unauthorized practice of law and for the appropriate injunctive relief permanently enjoining respondent from doing so.

Pursuant to Gov.Bar R. VII(9), and to the extent authorized, relator may seek reimbursement from the board for expenses and attorney fees incurred in the further prosecution of this matter.

A copy of this opinion shall be served upon relator, respondent, all counsel of record, Disciplinary Counsel, and the Ohio State Bar Association.

*So ordered.*